Robert JAMISON, M.D., et
al., Plaintiffs,

v.

FEDERAL TRADE COMMISSION, et
al., Defendants.

Civ. A. No. 85–3916.

United States District Court,
District of Columbia.

March 3, 1986.

Whitney Seymour, Jr., pro hac vice, New York City, for plaintiffs.

Mary Coster Williams, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This case challenges a Federal Trade Commission ("FTC") enforcement proceeding against certain anesthesiologists. That proceeding, entitled *In the Matter of Jose F. Calimlim, M.D., et al.,* was commenced by the FTC on September 30, 1985 and alleges that plaintiffs, among other named parties, combined or conspired to raise the fees paid for anesthesia services in the Rochester, New York, area.

Plaintiffs seek a preliminary injunction to prevent further action in the enforcement proceeding. Plaintiffs allege that the FTC complaint was filed in violation of statutory and constitutional rights and request relief in the form of a declaratory judgment that the FTC complaint is null and void and an injunction prohibiting additional FTC enforcement actions against the anesthesiologists.

Defendants have responded by moving for transfer of the case to the court of appeals or for dismissal. They assert that this Court lacks jurisdiction over plaintiffs' claims and that, even if jurisdiction existed, the FTC action is not reviewable at this point. Additionally, defendants oppose any issuance of a preliminary injunction by contending that plaintiffs have not made the showing necessary to obtain that remedy.

## I. BACKGROUND

Plaintiffs are seven duly licensed anesthesiologists who practice in New York. Each is a named respondent in the FTC proceeding. During 1980 and 1981, plaintiffs participated in Genesee Valley Health

Care, Inc. ("Rochester Blue Shield"), a medical prepayment plan serving the Rochester area. Plaintiffs charge that Rochester Blue Shield was improperly controlled by physician participants and was engaging in illegal price-fixing by setting the compensation rate for anesthesiologists at a level below that charged in other cities. After efforts to change the compensation rate failed, more than 30 anesthesiologists, including plaintiffs, resigned from the Rochester Blue Shield program.

An FTC investigation of the resignations led to the filing of a complaint under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1982). Plaintiffs attack that FTC action on several grounds. First, they assert that the only antitrust violation was committed by Rochester Blue Shield. They cite a recent decision which found that entity's rate-setting bylaws "per se illegal." *Addino v. Genesee Valley Medical Care, Inc.*, 593 F.Supp. 892, 901 (W.D.N.Y.1984). According to plaintiffs, the FTC refused to investigate Rochester Blue Shield because of political considerations. Second, plaintiffs argue that the FTC investigation of their conduct was insufficient. Finally, plaintiffs contend that the FTC press release announcing the proceeding against the anesthesiologists was inaccurate and led to improper accusations against plaintiffs in the media. These FTC actions are alleged to infringe upon plaintiffs' fifth amendment rights.

Moreover, plaintiffs assert that their resignations were protected by the first amendment. The New York legislature has occasionally considered legislation to limit physician participation on the boards of directors of Blue Shield plans, and a bill limiting such participation to one-fourth of the seats on the boards was enacted in 1985 and became effective on January 1, 1986. The filing of the FTC complaint thus allegedly chilled plaintiffs' free speech and violated plaintiffs' right to petition the government for redress of grievances.

## II. DISCUSSION

In their motion to transfer or to dismiss, defendants contend that *Telecommunications Research & Action Center v. FCC (TRAC)*, 750 F.2d 70 (D.C.Cir.1984), requires transfer of this case to the court of appeals. In *TRAC*, the Court of Appeals held that, "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." 750 F.2d at 75 (emphasis in original). This holding was "considered separately and approved by the whole court, and thus constitutes the law of the circuit." *Id.* at 75 n. 24.

This Court thus must first determine whether any "statute commits review of [FTC] action to the Court of Appeals." The FTC proceeding challenged by plaintiffs was commenced under 15 U.S.C. § 45(b) (1982). Final orders resulting from such proceedings are originally reviewable in the courts of appeals. *Id.* §§ 45(b)–(d); *see also Consumer Federation of America v. FTC*, 515 F.2d 367, 372 (D.C.Cir.1975); *Miles Laboratories v. FTC*, 140 F.2d 683, 684–85 (D.C.Cir.), *cert. denied*, 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582 (1944).[1] Accordingly, this case meets the first requirement of *TRAC*.

The Court next must ascertain whether this action seeks "relief that might affect the Circuit Court's future jurisdiction." *TRAC*, 750 F.2d at 75. The flexibility of this language has been found "troublesome," *Zantop International Airlines v. Engen*, 601 F.Supp. 667, 669 (D.D.C.1985), but subsequent cases reveal that the language should be broadly construed. Thus, the *TRAC* doctrine has been applied to actions seeking to require or accelerate

---

1. As the court of appeals has previously stated, "Whether, having issued a complaint and held a hearing, [the FTC's] decision on the facts and on the law is correct is a question which cannot be challenged in a District Court, either before or after the event, for in such case an appeal to an appropriate court of appeals is made the exclusive remedy." *Miles Laboratories v. FTC*, 140 F.2d at 684–85 (citing 15 U.S.C. § 45(d)).

agency action; *see Oil, Chemical, and Atomic Workers International Union v. Zegeer,* 768 F.2d 1480 (D.C.Cir.1985); *International Union, UAW v. Donovan,* 756 F.2d 162 (D.C.Cir.1985); *TRAC,* 750 F.2d at 70; and to actions seeking to prevent future agency action; *see Community Nutrition Institute v. Young,* 773 F.2d 1356 (D.C.Cir.1985); *Zantop International Airlines,* 601 F.Supp. at 667.

■ It seems plain that this case meets the second requirement of *TRAC.* Plaintiffs' request for injunction obviously seeks relief that might affect the future jurisdiction of the court of appeals, since such an injunction would prevent the FTC from issuing a final order reviewable by the court of appeals. That plaintiffs seek preliminary injunctive relief does not alter the analysis. *TRAC* has been applied to actions seeking such relief. *See Community Nutrition Institute v. Young,* 773 F.2d at 1360–61; *Zantop International Airlines,* 601 F.Supp. at 668–69. Nor do plaintiffs' allegations of FTC bias change the result; the court of appeals already has held *TRAC* applicable to cases alleging that an agency action was improperly motivated. *See Air Line Pilots Ass'n v. Civil Aeronautics Board,* 750 F.2d 81, 88 (D.C. Cir.1984).

**2.** Plaintiffs strenuously argue that the *TRAC* court did not reverse the jurisdictional rule governing constitutional claims that was established in *National Advertisers.* This argument is incorrect. In referring to claims that affect the court of appeals' future statutory review authority, the *TRAC* court noted:

> Past suggestions that the District Court has general federal question jurisdiction under 28 U.S.C. § 1331 over some of these claims were in error. *See, e.g., National Advertisers,* 627 at 1157 (statement that the District Court had jurisdiction over agency bias claim); ....

*TRAC,* 750 F.2d at 77 n. 30. Reference to the cited page of *National Advertisers* reveals the following discussion:

> In their complaints, however, the plaintiffs alleged a violation of their procedural rights under the Constitution and the Administrative Procedure Act (APA).... Thus, the district court clearly had jurisdiction—i.e., power—to resolve the controversy under 28 U.S.C. § 1331(a) ... and 28 U.S.C. § 1337.... Once

■ Plaintiffs argue that *TRAC* is inapplicable to cases raising constitutional claims. While research has uncovered no decisions specifically applying *TRAC* to cases involving constitutional arguments, that fact should not bar application of *TRAC* to this case. The *TRAC* court expressly found erroneous a prior case which held that federal district courts have general federal question jurisdiction over "nonfrivolous constitutional claims of agency bias and prejudgment." *TRAC,* 750 F.2d at 75 n. 23, 77 n. 30 (citing *Association of National Advertisers v. FTC,* 627 F.2d 1151, 1157 (D.C.Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980)).[2] In addition, the court of appeals has held that *TRAC* applies to agency bias claims such as those here at issue, although those claims were not couched in constitutional terms. *See Air Line Pilots Ass'n,* 750 F.2d at 88. Finally, acceptance of plaintiffs' argument would cripple the purpose of the *TRAC* doctrine, since plaintiffs could avoid application of *TRAC* simply by attaching a constitutional claim—such as violation of due process or freedom of speech—to their complaints.[3]

As plaintiffs have noted, the *TRAC* Court did recognize the possibility of

> a small category of cases in which the underlying claim is not subject to the

> a plaintiff has alleged a nonfrivolous constitutional claim, the district court has jurisdiction under section 1331, and dismissal for want of jurisdiction is improper even if dismissal for failure to state a claim upon which relief could be granted would be proper....

627 F.2d at 1157.

The *TRAC* court's determination that the above-quoted discussion was "in error" thus clearly indicates that cases raising constitutional claims are within the *TRAC* doctrine.

**3.** It is significant to bear in mind that application of *TRAC* to cases such as this will not deprive plaintiffs of a forum in which to litigate their constitutional claims. Rather, it merely requires that those claims be heard by the court of appeals instead of the district court. Plaintiffs do not make the untenable suggestion that the court of appeals would be an inadequate forum in which to air their constitutional grievances. *See TRAC,* 750 F.2d at 78 ("When statutory review is available in the Court of Appeals it will rarely be inadequate.").

jurisdiction of the Court of Appeals (and thus adjudication of the claim in the District Court will not affect any future statutory review authority of the Circuit Court). In such cases, where a denial of review in the District Court will truly foreclose all judicial review, district court review might be predicated on the general federal question jurisdiction statute, 28 U.S.C. § 1331. For example, in *Leedom v. Kyne*, [358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)], the Supreme Court held that, even though there is a statutory prohibition against review of representation orders of the [NLRB], a District Court has jurisdiction under section 1331 in the *very limited circumstance* where the Board has clearly violated an express mandate of the statute and plaintiff has no alternative means of review.

750 F.2d at 78 (emphasis in original). This case does not fall within that "small category of cases," however, because plaintiffs have an "alternative means of review."

 It therefore seems clear that *TRAC* governs this case. When a district court lacks jurisdiction by virtue of *TRAC*, the correct response is to transfer the case to the court of appeals under 28 U.S.C. § 1631 (1982). *See TRAC*, 750 F.2d at 79 n. 37. As such, defendants' motion to

transfer the case to the court of appeals is granted.[4]

---

4. This case presents the interesting question of whether a court should determine the applicability of *TRAC* before reaching more general reviewability issues. In this case, for example, defendants raise the issues of whether there is a reviewable "final agency action," whether the FTC's commencement of an enforcement proceeding is nonreviewable as an action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2) (1982), and whether review is barred by general principles of ripeness. This Court concludes that the *TRAC* question must be the threshold question for several reasons.

First, the *TRAC* court made it clear that the import of its decision "strips the District Court of general federal question jurisdiction" over interlocutory appeals from agency action or inaction when a statute vests review over final agency action in the court of appeals. 750 F.2d at 77. A federal court's jurisdiction over the subject matter of the case before it is the first question to be answered by that court. Indeed, the *TRAC* court noted that jurisdiction "'is, of

necessity, the first issue for an Article III court. The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other ground.'" 750 F.2d at 75 (quoting *Tuck v. Pan American Health Org.*, 668 F.2d 547, 549 (D.C.Cir.1981)).

Second, sound policy considerations compel this conclusion. Here, for example, plaintiffs assert that the "final agency action" rule articulated in *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), is inapplicable under the circumstances of this case. Since resolution of that question plainly could "affect the Circuit Court's future jurisdiction," *TRAC*, 750 F.2d at 75, that question must be answered by the court of appeals. Similar considerations arise with respect to whether an agency action should be deemed "committed to agency discretion by law" or whether general ripeness principles should bar review of a given case.