**FIRST COMMODITY CORPORATION OF BOSTON, Plaintiff,**

**v.**

**COMMODITY FUTURES TRADING COMMISSION, et al., Defendants.**

**Civ. A. No. 85–4221–S.**

United States District Court, D. Massachusetts.

July 31, 1986.

trial may be had without injustice. *See Martell*   *v. Boardwalk Enterprises, supra,* 748 F.2d at 756.

James M. Bruch, David G. Leftancois, First Commodity Corp., Boston, Mass., Jeffrey S. Rosen, Stoppleman, Rosen, Eaton & DeMartino, Washington, D.C., for plaintiff.

Edward S. Geldermann, Commodity Futures Trading Com'n, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

SKINNER, District Judge.

Plaintiff First Commodity Corporation of Boston ("First Commodity"), a futures commission merchant registered with defendant Commodity Futures Trading Commission (the "Commission"), filed this action against the Commission and the individual Commissioners seeking injunctive and declaratory relief concerning the reparations program administered by the Commission pursuant to § 14 of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. § 18. That section provides that "[a]ny person complaining of any violation of any provision of [the Act], or any rule, regulation or order issued [thereunder], by any person who is registered under [the Act] may ... apply to the Commission for an order awarding actual damages proximately caused by such violation." 7 U.S.C. § 18(a). Decisions on complaints filed with the Commission under § 14 are rendered by staff in the Office of Proceedings, Judgment Officers and Administrative Law Judges ("ALJ's"). *See* Rule 12 of the Revised Rules Relating to Reparation Proceedings, 17 C.F.R. Part 12. As of February 13, 1986, First Commodity was a respondent in 86 reparation actions pending before the Commission.

In Count I of the Complaint, plaintiff seeks a declaration that by allegedly participating in the preparation of a series of investigative reports concerning the commodity industry for a Chicago television station and arranging for the series to be shown to the staff of the Office of Proceedings, Judgment Officers and ALJ's, the Commission violated plaintiff's right to due process of law as guaranteed by the Fifth Amendment of the United States Constitution and § 7 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 556(b). First Commodity also seeks an injunction restraining the Commission and its agents and employees from engaging in any conduct tending to deprive plaintiff of an impartial forum in reparation actions. In Count II, plaintiff seeks a judgment declaring that the reparations program is unconstitutional as violative of Article III and an order enjoining the Commission from administering the reparations program.

The defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. In the alternative, they contend that Count I should be dismissed for failure to state a claim and for failure to exhaust administrative remedies and that Count II should be dismissed because the constitutional claim under Article III is not yet ripe and, in any event, is without merit.

*Jurisdiction.*

The Commission asserts that plaintiff's complaint should be dismissed because subject matter jurisdiction over the entire action lies exclusively in the United States Court of Appeals. Section 14(e) of the Act provides, in pertinent part:

> Any order of the Commission entered hereunder shall be reviewable on petition of any party aggrieved thereby, by the United States Court of Appeals for any circuit in which a hearing was held, or if no hearing was held, any circuit in which the appellee is located, under the procedure provided in paragraph (b) of section 6 of this Act.

7 U.S.C. § 18(e). First Commodity claims that this section does not vest "exclusive" jurisdiction in the courts of appeal. However, § 14(d) of the Act, after stating that reparation awards may be enforced by means of orders issued by district courts,

provides that "[s]ubject to the right of appeal under subsection (e) of this section, an order of the Commission awarding reparations shall be final and conclusive". 7 U.S.C. § 18(d). This language clearly indicates that the district courts do not have jurisdiction to review the merits of reparation awards. *See New England Telephone and Telegraph Co. v. Public Utilities Commission*, 742 F.2d 1, 7 (1st Cir. 1984). Moreover, it is well settled that "even where Congress has not expressly conferred exclusive jurisdiction, a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute". *Investment Company Institute v. Board of Governors of the Federal Reserve System*, 551 F.2d 1270, 1279–80 (D.C.Cir.1977); *accord, e.g., Public Utilities Commissioner of Oregon v. Bonneville Power Administration*, 767 F.2d 622, 627 (9th Cir.1985) (*"Bonneville"*).

■ Of course, the Commission has not issued any final order which is relevant to this case. But where a statute explicitly confers jurisdiction upon the courts of appeal to review agency action, that jurisdiction is exclusive and deprives all other courts of jurisdiction over any "suit seeking relief that might affect ·the Circuit Court's future jurisdiction". *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70, 78–79 (D.C.Cir.1984) (*"TRAC"*); *Bonneville*, 767 F.2d at 626. Although *TRAC* concerned a challenge to nonfinal agency action on the ground of unreasonable delay, its holding applies to challenges to nonfinal agency action on the ground of bias. *Bonneville*, 767 F.2d at 629; *Air Line Pilots Ass'n Intern. v. C.A.B.*, 750 F.2d 81, 88 (D.C.Cir.1984); *see Jamison v. F.T.C.*, 628 F.Supp. 1548, 1551 & n. 2 (D.D.C.1986).

First Commodity contends that the courts of appeal lack jurisdiction to grant the injunctive relief requested in either count of its complaint. It notes that § 14(e) of the Act incorporates § 6(b) of the Act, 7 U.S.C. § 9, by reference. That section gives the courts of appeal "jurisdiction to affirm, to set aside, or modify the order of the Commission ..." From this, plaintiff concludes that the Court of Appeals does not have the authority to issue declaratory judgments or prospective injunctions of the type sought. Plaintiff's Brief at 19.

The full text of the relevant portion of § 6(b) indicates the Court of Appeals has broader power than the above-quoted language suggests:

> After the issuance of the order by the Commission, the person against whom it is issued *may obtain a review of such order or such other equitable relief as to the court may seem just* by filing in the United States court of appeals ... a written petition ... praying that the order of the Commission be set aside.... Upon the filing of the petition the court shall have jurisdiction to affirm, to set aside, or modify the order of the Commission, and the findings of the Commission as to the facts, if supported by the weight of the evidence, shall in like manner be conclusive.

7 U.S.C. § 9 (emphasis added). Moreover, the All Writs Act, 28 U.S.C. § 1651(a), empowers a federal court to issue writs of mandamus necessary to protect its prospective jurisdiction. Should the Court of Appeals choose to exercise jurisdiction over plaintiff's interlocutory claim of bias, it would have the power to issue any necessary orders. *See Bonneville*, 767 F.2d at 630.[1]

■ First Commodity claims that *TRAC* is inapplicable because the relief sought in this action does not relate to the pending reparation actions. This argument is not persuasive. Although the requested injunction is prospective, it could only be based upon a determination that the defendants' past conduct violated either the

**1.** If the Court of Appeals finds that the administrative record is inadequate, it may remand the case to the agency or, in some circumstances, refer the case to a special master, *see* 28 U.S.C. § 2347(b)(3). *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 469, 104 S.Ct. 1936, 1940, 80 L.Ed.2d. 480 (1984).

Due Process Clause of the Fifth Amendment or § 7 of the APA, 5 U.S.C. § 556(b). Indeed, this is precisely the declaratory judgment plaintiff seeks. Such a judgment would have *res judicata* effect with respect to plaintiff's claims of bias in the reparation actions. As any judgment would predetermine an issue to be raised in First Commodity's appeal from an adverse determination in any of the reparation actions, it clearly would affect the prospective jurisdiction of the Court of Appeals. Accordingly, jurisdiction over Count I of the complaint is precluded by the analysis of *TRAC.*

■ Plaintiff's claim that the reparation program violates Article III of the Constitution stands on a different footing, however. This challenge to § 14 of the Commission's enabling statute is not within the class of claims committed to the courts of appeal by §§ 14(d) and (e), 7 U.S.C. § 18(d)(e). *Cf. Bonneville,* 767 F.2d at 625–26 (constitutional challenge to ongoing agency proceedings within court of appeals' exclusive jurisdiction where judicial review provision provided that "[s]uits to challenge the constitutionality of this chapter ... shall be filed in the United States court of appeals ...", 16 U.S.C. § 839f(e)(5)). Although consideration of the merits of First Commodity's claim may have some effect on future appellate jurisdiction, I agree with Judge Hogan that the holding of *TRAC* "is limited to claims seeking review of agency process, and does not encompass constitutional challenges to [an] agency's enabling statute". *Ticor Title Insurance Co. v. F.T.C.,* 625 F.Supp. 747, 749 (D.D.C.1986); *see Assure Competitive Transportation, Inc. v. United States,* 629 F.2d 467, 471 (7th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981). Only in cases concerning agency process do the concerns of judicial economy and expertise which the Court of Appeals found "compelling" in *TRAC,* 750 F.2d at 78, have significant weight. Accordingly, the district court has subject matter jurisdiction over the constitutional claim advanced in Count II of the complaint.

*Ripeness.*

■ Defendants next contend that plaintiff's Article III claim is not sufficiently ripe to establish a concrete case or controversy.

[The] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements ... The problem is best seen in a twofold aspect, requiring [courts] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Roosevelt Campobello International Park Commission v. U.S.E.P.A.,* 684 F.2d 1034, 1040 (1st Cir.1982). First Commodity's constitutional challenge clearly meets the first prong of the ripeness test. Although there is no final agency action to review, the pendency of the reparation actions satisfies the finality aspect of the ripeness doctrine because the case challenges the Commission's authority to act, and not the merits of any particular action. *See Thomas v. Union Carbide Agricultural Products Co.,* — U.S. —, —, 105 S.Ct. 3325, 3334, 87 L.Ed.2d 409 (1985); *cf. Sanchez-Mariani v. Ellingwood,* 691 F.2d 592, 596 (1st Cir.1982). The action is not premature. In defending 86 reparations actions, plaintiff has felt the effects of the reparations scheme "in a concrete way". *See id.* (quoting *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515) (claim ripe where plaintiff had engaged in lengthy arbitration proceedings pursuant to statutory scheme, the constitutionality of which was in question); *cf. Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1019–20, 104 S.Ct. 2862, 2882, 81 L.Ed.2d 815 (1984) (holding challenge to same scheme unripe where plaintiff had never been forced to resort to arbitration). Moreover, the issue presented by this case is fit for review because it is "purely legal, and will not be clarified by further factual development". *Thomas,* — U.S. at —,

105 S.Ct. at 3333; *Roosevelt,* 684 F.2d at 1040.

The second prong of the ripeness test, whether withholding consideration will work a hardship on the parties, raises a closer question. The general rule is that the courts will not interfere with ongoing administrative proceedings unless the plaintiff will otherwise suffer irreparable injury. *E.g., Abbott Laboratories,* 387 U.S. at 153, 87 S.Ct. at 1517; *see Sanchez-Mariani,* 691 F.2d at 596. This rule is not as clearly appropriate when the challenge is to the authority of an agency to act, rather than to the merits of any particular action, because the claim does not depend on the administrative process for its factual or legal development. *Ticor Insurance,* 625 F.Supp. at 750. The rule has nevertheless recently been applied to a constitutional challenge to ongoing proceedings. *Hastings v. Judicial Conference of the United States,* 770 F.2d 1093, 1102 (D.C.Cir.1985). In the absence of significant hardship, the principle of restraint applies here.

Plaintiff contends that it has established sufficient hardship under *Thomas,* —— U.S. at ——, 105 S.Ct. at 3333. In *Thomas,* the Court held that chemical manufacturers' claims that mandatory arbitration scheme violated Article III were ripe where the manufacturers had suffered taking and were statutorily required to proceed to arbitration to receive compensation. The Court noted that the injury to the manufacturers lay in being subjected to the exercise of unconstitutional jurisdiction, and that this was distinct from any monetary injury sustained as a result of the arbitration. The hardship identified by the Court consisted of the doubt in the pesticide industry about the validity of the arbitration scheme. "At a minimum Stauffer [a manufacturer who had engaged in arbitration] and arguably each appellee [other manufacturers who had suffered a taking but not yet proceeded to arbitration], suffers the continuing uncertainty and expense of depending for compensation on a process whose authority is undermined because its constitutionality is in question". *Id.* at ——, 105 S.Ct. at 3333. However, in my opinion, First Commodity has not suffered hardship comparable to that found in *Thomas.*

In the cases relied on in *Thomas* for the proposition that uncertainty is sufficient hardship, the affected industry was forced to make decisions and considerable expenditures in the face of uncertainty. *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Comm'n,* 461 U.S. 190, 201–03, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752 (1983) (decision to construct nuclear facilities in light of challenged moratorium on certification of new nuclear plants); *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 144, 95 S.Ct. 335, 359, 42 L.Ed.2d 320 (1974) (decision to expend funds for maintenance in light of challenged reorganization). In *Thomas,* members of the pesticide industry had to decide whether to seek registration of new pesticides, a procedure which required disclosure of data which would be used in evaluating follow-up registrations, while in doubt of the constitutionality of the mandatory arbitration scheme which provided the sole means of obtaining compensation for use of the data. —— U.S. at ——, 105 S.Ct. at 3333. They suffered "the injury of being forced to choose between relinquishing any right to compensation from a follow-on registrant or engaging in an unconstitutional adjudication". *Id.*

First Commodity, however, is faced with no such dilemma. It has not suffered an injury for which it must seek redress, if at all, in an unconstitutional forum, nor must it make decisions crucial to its continuing business while uncertain as to the legitimacy of its actions. The only hardship it must bear is the cost and inconvenience of defending itself in the allegedly unconstitutional forum. However, "the expense and disruption of defending [oneself] in protracted adjudicatory proceedings" does not constitute irreparable harm sufficient to justify interlocutory review of agency decisions. *FTC v. Standard Oil Company of California,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980); *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415

U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). Neither is it sufficient to support review in this case. First Commodity's reliance on *Atlantic Richfield Co. v. U. S. Dept. of Energy,* 769 F.2d 771 (D.C. Cir.1984), is misplaced. In that case, plaintiff was faced with the dilemma of having to choose between complying with allegedly *ultra vires* discovery orders and flouting the orders and facing the consequences should the orders be upheld. *Id.* at 783–84. In contrast, should First Commodity finally be held liable in any of the reparation actions, it may appeal the Commission's judgment to the Court of Appeals and challenge it on constitutional grounds. *See Commodity Futures Trading Commission v. Schor,* — U.S. —, —, 106 S.Ct. 3245, 3252, 92 L.Ed.2d 675 (1986) (Article III challenge raised *sua sponte* by Court of Appeals considered by Supreme Court).

Finally, there is no apparent widespread doubt concerning the validity of the reparations scheme. *See Schor,* — U.S. at —, 106 S.Ct. at 3260 (the reparations scheme "is of unquestioned constitutional validity"); *cf. Thomas,* — U.S. at —, 105 S.Ct. at 3333 ("Doubts about the validity of [the Federal Insecticide, Fungicide and Rodenticide Act's] data-consideration and compensation schemes have plagued the pesticide industry and seriously hampered the effectiveness of [the Act's] reforms of the registration process."). Although *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), was decided four years ago, and the Act went into effect in 1974, this is, according to defendants, the first Article III challenge to the reparations scheme. Thus, there is no pressing public interest which would be served by immediate consideration of First Commodity's Article III claim. Accordingly, I conclude that plaintiff's Article III claim is not ripe for review.

The defendants request that the case be dismissed in its entirety. Dismissal is clearly the appropriate action with respect to Count II. However, as plaintiff points out, when a court finds that there is a want of jurisdiction, it "shall, if it is in the interest of justice, transfer [the] action ... to any other ... court in which the action ... could have been brought ..." 28 U.S.C. § 1631. As the jurisdictional issue raised by Count I had not been decided in this circuit, it is in the interest of justice to transfer the claim to the Court of Appeals. *See TRAC,* 750 F.2d at 79 n. 37.

Accordingly, Count I of First Commodity's complaint is hereby transferred to the Court of Appeals. Count II is DISMISSED.