**TICOR TITLE INSURANCE COMPANY, et al.,**
**Appellants,**

v.

**FEDERAL TRADE COMMISSION, et al.**

No. 86–5078.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 20, 1986.

Decided March 24, 1987.

Theodore B. Olson, with whom Larry L. Simms and Stephen J. Landes, Washington, D.C., were on brief, for appellants.

James M. Spears, Deputy Asst. Atty. Gen., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., Robert E. Kopp, Douglas Letter and Thomas M. Bondy, Attys., Dept. of Justice, were on brief, for appellees.

Before EDWARDS and WILLIAMS, Circuit Judges, and JOYCE HENS GREEN,* District Judge of the United States District Court for the District of Columbia.

Separate opinions filed by Circuit Judge EDWARDS, Circuit Judge WILLIAMS and District Judge JOYCE HENS GREEN.

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

HARRY T. EDWARDS, Circuit Judge:

In this case we are asked to rule on a facial constitutional challenge to section 5(b) of the Federal Trade Commission Act (the "Act"),[1] which authorizes the Federal Trade Commission ("FTC" or the "Commission") to initiate and prosecute complaints against persons suspected of engaging in unfair methods of competition, or unfair or deceptive trade practices. Pursuant to this statutory authority, the FTC issued a complaint against the appellants, six title insurance companies, charging that they illegally restrained competition by fixing prices for title search and examination services.[2] Although the appellants have asserted nonconstitutional defenses to the FTC complaint in an ongoing proceeding before an Administrative Law Judge ("ALJ"), they have also brought this action seeking a declaration that section 5(b) of the Act is unconstitutional and an injunction against the ongoing prosecution and all future FTC prosecutions.

The appellants' constitutional challenge centers on Article II of the Constitution, which provides that "[t]he executive Power shall be vested in a President of the United States of America," and further provides that the President "shall take Care that the Laws be faithfully executed."[3] According to the appellants, Article II prohibits the FTC, an independent federal agency outside the direct control and supervision of the President, from exercising the law enforcement powers conferred upon it by section 5(b) of the Act. Without passing on the merits of this argument, the District Court dismissed the appellants' claim, holding that it was not yet ripe for adjudication.[4] Judge Green and I agree that the appellants' claim must be dismissed on one of two prudential grounds: exhaustion or ripeness. Judge Green would affirm the District Court's determination that this case is not yet ripe for review. Judge Williams, on the other hand, would hold that the filing of a complaint against the appellants was not final agency action, and that the District Court therefore lacked subject matter jurisdiction over the appellants' claim. The entire panel agrees, however, that the appellants' claim was properly dismissed.

Because I would find that the appellants were required to exhaust their available administrative remedies in the ongoing FTC enforcement proceedings before raising their constitutional claim in federal court, I would affirm the judgment of the District Court on the prudential ground of exhaustion.

## I. INTRODUCTION

The issue presented by this complaint is relatively straightforward. The appellants have brought a facial constitutional challenge under the general federal question statute, 28 U.S.C. § 1331 (1982), to the authority of the FTC to initiate and prosecute a complaint against them. The appellants, however, also purport to have nonconstitutional (or statutory) defenses to the FTC complaint, which they are currently asserting before an ALJ in an ongoing administrative proceeding. The question posed by this appeal, then, is whether the appellants must exhaust their *nonconstitutional* defenses in the ongoing administrative proceeding before bringing their *constitutional* challenge to the agency's authority in federal court. If the appellants are required to exhaust their administrative remedies, and they prevail on their nonconstitutional defenses, the court will not be required to address the constitutional question. The constitutional question will be preserved, however, if the appellants are found guilty of restraining competition and the Commission issues a cease and desist order against them. The appellants would then be entitled to raise their constitutional challenge in an appeal from the final agency action under 15 U.S.C. § 45(c) (1982).

1. 15 U.S.C. § 45(b) (1982).

2. *See* Complaint, *reprinted in* Appendix ("App.") 33.

3. U.S. CONST. art. II, §§ 1, cl. 1, 3.

4. *Ticor Title Ins. Co. v. FTC,* 625 F.Supp. 747 (D.D.C.1986).

## II. Legal Background

### A. *The* Hastings *and* Andrade *Precedents*

On two recent occasions, this circuit has considered whether to require litigants to pursue available remedies on nonconstitutional claims where the litigant has brought a constitutional challenge to the very authority of the government to take action against him. Most recently, in *Hastings v. Judicial Conference of the United States,* 770 F.2d 1093 (D.C.Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3272, 91 L.Ed.2d 562 (1986), we considered whether a United States District Court judge should be allowed to challenge the facial constitutionality of the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 331–332, 372, 604 (1982), which establishes an elaborate mechanism by which federal judges may be investigated and disciplined by their fellow judges for "conduct prejudicial to the effective and expeditious administration of the business of the courts." *Id.* § 371(c)(1). In *Hastings,* we held that we should postpone review of the constitutional question until the procedures outlined in the statute had actually been applied to Judge Hastings. We reasoned that we were ill-equipped to pass judgment on the facial validity of the statute without better knowledge of the precise nature of the powers to be exercised by the judicial tribunals under the statutory scheme. We thus assumed that exhaustion of the statutory procedures would refine the constitutional issues for subsequent judicial review. 770 F.2d at 1099–1101.

In a separate portion of the opinion, however, we considered whether to pass on the constitutionality of certain informal fact-gathering powers that *had* been exercised under the statute. Again, we declined to reach the constitutional issue, reasoning that to do so "would contravene another aspect of avoidance—the policy [against] rendering judgment on the constitutionality of proceedings *while* the proceedings themselves are going on." *Id.* at 1102 (emphasis in opinion). We found that disruption of the ongoing proceedings would be justi-

fied only if the plaintiff could demonstrate that he would suffer "serious and irremediable injury" in the absence of immediate judicial review. *Id.* We concluded that Judge Hastings had not made a showing of irreparable injury because the proceedings to which he was subject might terminate at any number of points before sanctions were imposed against him. The effect of our holding was to require Judge Hastings to defend himself in the statutory proceedings before bringing his constitutional challenge to the facial validity of the statute in federal court.

Two years before the decision in *Hastings,* a different panel of the court issued an opinion in *Andrade v. Lauer,* 729 F.2d 1475 (D.C.Cir.1984). *Andrade* is significant because it is not easily reconciled with the judgment in *Hastings.* In *Andrade,* employees of the Office of Juvenile Justice and Delinquency Prevention ("OJJDP")— an agency within the Department of Justice—challenged the implementation of a reduction in force ("RIF"), pursuant to which they were removed or demoted from their positions at the agency. The employees challenged the RIF on three grounds. First, they argued that the procedures used in implementing the RIF violated federal personnel regulations. Second, they argued that the RIF violated certain statutory proscriptions. Third, they maintained that the officials responsible for implementing the RIF were without *authority* to do so, because they held office in violation of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2.

The first issue addressed in *Andrade* was whether the employees were required to pursue their nonconstitutional and constitutional claims through the "statutory and contractual" grievance procedure contained in their union's contract with the Department of Justice. 729 F.2d at 1484–91. Congress had mandated that public sector collective bargaining agreements contain a procedure for resolving grievances in cases involving RIFs,[5] and had defined a "grievance," in part, as any com-

---

5. *Id.* at 1485–86 (citing 5 U.S.C. § 7121(a)(1) (1982)).

plaint by an employee concerning "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." [6] Accordingly, the union and the Department of Justice had negotiated a grievance provision conforming to the requirements prescribed by Congress. Under the parties' negotiated grievance provision, a grievance concerning a RIF could be pursued in several steps. First, the individual employee affected by the RIF could appeal the adverse employment action to certain high level management officials. Second, if the grievance was not resolved at this level, the union could refer the matter to arbitration. Finally, either party could appeal the arbitrator's award to the Federal Labor Relations Authority. *Id.* at 1485.

Because Congress had defined a "grievance" to include any complaint regarding a "claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment," and because the parties' contractual grievance provision had tracked this statutory language, we held that the employees were required to pursue their *personnel* and *statutory* claims through the available steps of the grievance procedure before bringing them in federal court. *Id.* at 1484-90. We held, however, that the employees were not required to pursue their *constitutional* claim through the grievance procedure before raising that claim in federal court, because the grievance procedure was not the appropriate forum in which to adjudicate a constitutional challenge. The decisionmakers in that forum, we reasoned, had neither the qualifications nor the expertise to articulate or develop the separation of powers principles implicated by the Appointments Clause. *Id.* at 1491.

Having found that the constitutional question was to be decided by the court rather than by the decisionmakers in the grievance procedure, we turned our attention to whether we should nevertheless postpone judicial review until the employ-

ees had submitted their *nonconstitutional* claims through the grievance procedure. We held that exhaustion of remedies on the nonconstitutional claims was unnecessary, despite the fact that a favorable decision on the employees' nonconstitutional claims would moot their constitutional claims. *Id.* at 1492. First, we reasoned that there was a complete divergence between the issues presented by the constitutional and nonconstitutional claims, so that none of the factual or legal issues resolved in the grievance proceedings would aid the court in deciding the constitutional question. *Id.* at 1492-93. Second, we reasoned that the constitutional violation alleged by the plaintiffs was a continuing one; even if the employees prevailed on nonconstitutional grounds, the officials responsible for implementing the RIF would continue to hold their offices in alleged violation of the Appointments Clause. Therefore, there was a "significant public interest" in reaching a final determination of the constitutional issue. *Id.* at 1493. Given the added fact that the employees faced an "extremely long and burdensome administrative remedy," we held that the exhaustion doctrine—"in general a prerequisite to obtaining judicial relief for an actual or threatened injury" [7]—should not be applied under the circumstances presented.

### B. *The Exhaustion and Ripeness Doctrines*

Apart from the obvious differences in the results reached in *Hastings* and *Andrade*, it is important to recognize that the cases rely on distinct legal theories. The principal holding in *Hastings* is that the plaintiff's claim was not "ripe" for judicial review; whereas in *Andrade* the court held that the plaintiffs need not "exhaust" their administrative remedies before pursuing their constitutional claims in court. Nonetheless, although *Hastings* relies on the ripeness doctrine, the court appears to be principally concerned with the requirement that Judge Hastings exhaust his adminis-

---

6. *Id.* at 1487 (citing 5 U.S.C. § 7103(a)(9) (1982)).

7. *Id.* at 1484 (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-64, 82 L.Ed. 638 (1938)).

trative remedies before seeking judicial review of his constitutional challenges.

*Hastings* is thus instructive in demonstrating areas of overlap in the *ripeness* and *exhaustion* doctrines, both of which serve at a minimum to postpone judicial consideration of claims that are otherwise cognizable in court. However, although the case law is sometimes confusing on this point, the purposes and tests associated with the application of each doctrine are distinct:

> When the party seeking review has come into court prematurely, he is likely to be told that he has failed to exhaust his administrative remedies or that the matter is not yet ripe for judicial review. Ripeness and exhaustion are complementary doctrines which are designed to prevent unnecessary or untimely judicial interference in the administrative process.
>
> If the agency proceeding is still at an early stage and the party seeking review has the right to an administrative hearing or review, the court will decline to hear his appeal on the ground that he has failed to exhaust his administrative remedies. Judicial intervention may not be necessary because the agency can correct any initial errors at subsequent stages of the process; moreover, the agency's position on important issues of fact and law may not be fully crystallized or adopted in final form. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 [58 S.Ct. 459, 82 L.Ed. 638] (1938), illustrates one situation in which this principle applies. The company had been served with an NLRB complaint, alleging that it had engaged in unfair labor practices. Bethlehem Shipbuilding took the position that the complaint was invalid because the NLBR [sic] had no jurisdiction over the company, and it tried to obtain immediate judicial review of the complaint. Despite the company's claim that it would suffer irreparable harm if it were forced to participate in an unnecessary evidentiary hearing, Bethlehem was required to exhaust its administrative remedies: "Lawsuits also often prove to have been groundless," the Court observed, "but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact." See also *FTC v. Standard Oil Co. of California* [449 U.S. 232], 101 S.Ct. 488 [66 L.Ed.2d 416] (1980) (issuance of an FTC complaint not "final agency action" subject to review before the final adjudicatory order is delivered).
>
> . . . .
>
> The ripeness doctrine looks to similar factors in determining the availability of review—that is, the fitness of the issues for judicial determination and the hardship to the parties that would result from granting or denying review—but it has a different focus and a different basis from exhaustion. The exhaustion doctrine emphasizes the position of the party seeking review; in essence, it asks whether he may be attempting to short circuit the administrative process or whether he has been reasonably diligent in protecting his own interests. Ripeness, by contrast, is concerned primarily with the institutional relationships between courts and agencies, and the competence of the courts to resolve disputes without further administrative refinement of the issues. In extreme cases, the ripeness doctrine serves to implement the policy behind Article III of the Constitution. Since the judicial power is limited to cases and controversies, federal courts cannot decide purely abstract or theoretical claims, or render advisory opinions.

E. GELLHORN & B. BOYER, ADMINISTRATIVE LAW AND PROCESS 316–19 (1981).

In a recent review of the ripeness doctrine, this court has stated the test for its application as follows:

> [In its prudential aspects] . . . the ripeness inquiry takes into account pragmatic concerns regarding "the institutional capacities of, and the relationship between, courts and agencies." These concerns include "the agency's interest in crystallizing its policy before that policy is subjected to judicial review," "the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting," and "the petitioner's

interest in prompt consideration of allegedly unlawful agency action." In *Abbott Laboratories* [*v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) ], the Supreme Court announced the two-pronged test for ripeness that balances these interests. The test requires a court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."

Pursuant to the "fitness of the issues" prong, we first must decide whether the disputed claims raise purely legal questions and would, therefore, be presumptively suitable for judicial review. Second, we determine whether the court or the agency would benefit from the postponement of review until the agency action or policy in question has assumed either a final or more concrete form. Finally, we examine the appellants' interest in immediate review. In order to outweigh any institutional interests in the deferral of review, appellants must demonstrate "hardship," *i.e.*, that "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs."

. . . .

We recognize that this hardship analysis relies in part upon an acceptance of the appellants' view of the merits.

*Better Gov't Ass'n v. Department of State*, 780 F.2d 86, 92, 94 (D.C.Cir.1986) (footnotes omitted).

Both the ripeness and the exhaustion doctrines are arguably implicated in the instant case. On balance, however, I believe that, apart from *Hastings*, the prevailing case law does not support a finding that the appellants' claim is unripe for judicial review. Given the benefit of hindsight and further reflection, *Hastings* appears to me to be somewhat aberrant in its application of the ripeness doctrine. However,

when *Hastings* is viewed as a case mostly concerned with the plaintiff's failure to exhaust his administrative remedies, the holding seems unexceptional.

In any event, it is my judgment that the instant case is principally concerned with an application of the exhaustion, not the ripeness, doctrine. My analysis will proceed accordingly.

### III. COMPETING CONSIDERATIONS DRAWN FROM ARGUABLY IRRECONCILABLE CASE PRECEDENT

#### A. The Parties' Main Contentions

As the above discussion demonstrates, there is an uneasy tension between this court's decisions in *Hastings* and *Andrade*. In *Andrade*, we permitted the plaintiffs to bring a constitutional challenge to an agency's authority to act without first requiring them to submit their nonconstitutional claims for administrative review. In contrast, we required the plaintiff in *Hastings* to exhaust the remedies available to him in ongoing proceedings *before* raising his constitutional challenge to the legitimacy of those proceedings.

Not surprisingly, the appellants would have us apply *Andrade* to the instant case and hold that they may challenge the constitutionality of FTC law enforcement proceedings without first pursuing their nonconstitutional defenses in the ongoing proceedings. As in *Andrade* (and in contrast to *Hastings*), they argue, this court will not benefit from the deferral of judicial review, because the nature of the law enforcement powers exercised by the Commission are well-known,[8] and this court need only decide the purely legal question whether those powers may be exercised consistent with the Constitution. In addition, the appellants argue that the constitutional violation alleged in the instant case— like the violation alleged in *Andrade* —is a continuing one; even if they prevail before

---

**8.** The appellants challenge both the authority of the FTC to *initiate* a complaint against them and the authority of the FTC to *prosecute* that complaint. Because the FTC has already exercised its statutory power to initiate a complaint, the appellants are correct in asserting that further

FTC proceedings will not shed any additional light on the nature of that power. The same is not true, however, of those law enforcement powers currently being exercised by the FTC against the appellants in ongoing administrative proceedings.

the Commission on nonconstitutional grounds, the Commission will be free to continue in its unconstitutional ways. From this vantage point, there is a significant public interest in deciding whether the Commission may validly exercise law enforcement powers.

The Commission, of course, argues that *Hastings* controls the instant case. According to the FTC, *Hastings* firmly establishes that ongoing agency proceedings are not to be interrupted in order for a court to entertain constitutional challenges to the authority of those proceedings. The Commission asserts that such an interruption is warranted only where the plaintiff can demonstrate that it will suffer irreparable injury from the withholding of judicial review. Here, it argues, the only injury alleged by the appellants is the cost of litigating their nonconstitutional claims in the ongoing agency proceedings. In *Hastings*, however, the plaintiff faced the identical burden; because the court would not immediately entertain his constitutional challenge, he would be forced to expend considerable resources defending himself in the allegedly unconstitutional statutory proceedings. Yet, in *Hastings*, the court found that the plaintiff had not alleged serious and irremediable injury sufficient to warrant the interruption of the ongoing proceedings of the judicial councils.

B. *Possible Distinctions Between* Hastings *and* Andrade

Because the principles enunciated in *Hastings* and *Andrade* are at apparent odds— and would seem to compel contrary results in the instant case—the parties have attempted to distinguish the two cases on their facts. I am not persuaded, however, that the cases are easily reconciled on this basis. Undeniably, *Hastings* and *Andrade* arose in significantly different factual contexts. However, a careful examination of the factual distinctions between the two cases reveals that those distinctions—at least for present purposes—are more superficial than real.

One distinction between the two cases lies in the nature of the underlying constitutional challenge. In *Hastings*, the plaintiff directly challenged the legitimacy of the ongoing proceedings, maintaining that the judicial councils were absolutely prohibited by the Constitution from subjecting him to investigatory and disciplinary proceedings. In *Andrade*, by contrast, the plaintiffs argued only that certain personnel actions taken by the government were unconstitutional; they did not challenge the legitimacy of the statutory/contractual grievance procedure available to them for appealing the government's actions. This distinction, however, is one without meaning, for in each case a successful constitutional challenge would have mooted the requirement that the plaintiffs exhaust their nonconstitutional claims in the available "administrative" fora. Thus, in each case we were directly confronted with the question whether to interfere with an established scheme for adjudicating nonconstitutional claims in order to immediately adjudicate a constitutional challenge to government authority.

*Andrade*, however, differs from *Hastings* in a second respect. In *Andrade*, the various procedures available to the plaintiffs for challenging their dismissals or demotions were incorporated in a privately negotiated grievance provision. We recognized in *Andrade* that the grievance process could not be used to resolve the plaintiffs' constitutional claim, and that the plaintiffs were therefore entitled to bring that claim in the first instance in federal court. In this respect, our holding in *Andrade* was very similar to that in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), where the Supreme Court made clear that the availability of a private grievance process does not waive an employee's right to pursue a separate public law issue in court.

The difficulty with distinguishing *Andrade* by analogy to *Alexander*, however, is that *Andrade* implicitly seemed to reject any such analogy. In holding that the employees need not submit their nonconstitutional claims through the grievance procedure before bringing their constitutional claim in federal court, we *might* have relied on *Alexander* for the proposition that

the availability of a private grievance procedure does not in any way affect an employee's right to adjudicate a public law issue in court. However, we attempted no analogy to *Alexander*. Instead, we reasoned that exhaustion was not required where the nonconstitutional and constitutional claims were almost entirely unrelated and where there was a significant public interest in deciding a potentially recurring question of constitutional law. Accordingly, it would be somewhat disingenuous to discount the precedential value of *Andrade* because we *might* have resolved that case on alternative grounds.

Finally, *Hastings* and *Andrade* differ in yet a third respect. In *Hastings*, we assumed that there would be value in requiring exhaustion because the constitutional issues raised by Judge Hastings would be refined for judicial review. In *Andrade*, by contrast, we found that we would not benefit from the postponement of judicial review because the facts upon which the employees' constitutional and nonconstitutional claims were based were largely unrelated. Again, however, an analysis of *Hastings* reveals that this distinction was not dispositive.[9] Although our primary concern in *Hastings* was to ensure that the plaintiff's claims were presented in a manner susceptible to judicial review, we also refused to decide the constitutionality of that portion of the statute that *had* been applied to Judge Hastings in a concrete, judicially-reviewable manner. This refusal was explicitly based on the doctrine that absent serious and irremediable injury, a court should be "loath to interfere" with ongoing administrative proceedings, even where plaintiffs challenge the very constitutionality of those proceedings. 770 F.2d at 1102.

## IV. ANALYSIS

It is evident from the above discussion that the instant case does not fit neatly into either the *Hastings* or the *Andrade* model. It is also evident that the two cases, though factually distinct, are not easily reconciled. The principle embraced in *Hastings*—that a court should be loath to interrupt ongoing administrative proceedings, even where a constitutional infirmity is alleged—strongly militates against immediate judicial review of the appellants' constitutional challenge. The principle embraced in *Andrade*—that courts may waive the exhaustion requirement where a constitutional challenge to the authority of an agency to act is adequately framed for judicial review—militates in favor of the opposite conclusion.

A principle that emerges from both *Hastings* and *Andrade*, however, is that the doctrine of exhaustion is a flexible one. As we explicitly noted in *Andrade*, the exhaustion requirement is generally not jurisdictional in nature, "but rather must be applied in accord with its purposes." 729 F.2d at 1484 (citing *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969)). My task, then, is to identify whether the particular facts of this case justify invocation of the exhaustion doctrine. In performing this task, I am of course mindful of the purposes of the exhaustion doctrine identified in both *Hastings* and *Andrade*. Because neither case answers the precise question before us, however, I must of necessity look elsewhere for additional guidance.

### A. The General Rule of Exhaustion

I begin my analysis with the general rule—recognized even in *Andrade*—that exhaustion of available administrative remedies is a prerequisite to obtaining judicial relief for an actual or threatened injury. 729 F.2d at 1484 (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638

**9.** It is also not clear in this case in which direction this supposed distinction cuts. With respect to the *initiation* of a complaint against the appellants, this case is closer to *Andrade*, because further agency proceedings will not clarify the nature of the power exercised by the Commission. With respect to the *prosecution* of the complaint, however, this case is closer to *Hastings*, because further agency proceedings may clarify the nature of the law enforcement powers exercised by the Commission and thereby refine the appellants' constitutional claim for judicial review. *See* note 8 *supra*.

(1938)). Applied to the instant case, this general rule would require the appellants to raise their nonconstitutional defenses in the pending FTC enforcement proceedings before bringing their constitutional challenge in federal court.

The appellants contend that this general rule should not be applied where the constitutional challenge goes to the very authority of the administrative body to conduct the relevant proceedings. In such circumstances, they argue, imposition of an exhaustion requirement would force litigants to submit to the very procedures they challenge as unconstitutional. In addition, they argue, the purposes served by the exhaustion doctrine would not be advanced by requiring exhaustion in this context. Exhaustion, they argue, is typically required in order to give the agency an opportunity to apply its expertise and to develop facts that will aid the court in reviewing the final agency action. Here, however, exhaustion would not permit the Commission to apply its expertise, because the agency is not equipped to pass on the constitutionality of its enabling statute. Likewise, there is no need for factual development by the agency, because the exact nature of the law enforcement powers exercised by the Commission are well-known, and will not be clarified in the administrative proceedings.[10]

Although the appellants' arguments have some real force,[11] they are insufficient un-

der the facts of this case to warrant a departure from the general rule of exhaustion. That general rule has frequently been applied even where the plaintiffs have challenged the very authority of the agency to conduct proceedings against them.[12] An illustrative case—indistinguishable from the one at bar—is *Rosenthal & Co. v. Bagley*, 581 F.2d 1258 (7th Cir.1978). There, the plaintiff challenged the authority of the Commodity Futures Trading Commission to adjudicate reparations claims brought by members of the public against registered commodities brokers, arguing that the statute conferring such authority violated the Seventh Amendment by abridging the right to jury trial in civil cases. Applying the exhaustion doctrine, the court held that the plaintiff could not bring its constitutional challenge until the agency proceedings had been concluded. The exhaustion doctrine, the court found, retains its vitality even when the collateral judicial action challenges the constitutionality of the basic statute under which the agency functions, even though one frequently asserted reason for requiring exhaustion, *viz.*, to give the agency an opportunity to avoid or correct error, is inapplicable because an agency will not ordinarily pass on the constitutionality of the statute under which it operates.

*Id.* at 1260 (footnote omitted).

The court identified two separate interests advanced by application of the exhaus-

---

**10.** In this respect, the appellants contend that this case differs markedly from *Hastings*. In *Hastings*, they observe, this court dealt with a recently enacted statute that had never been fully applied. It was therefore imperative that the court have *before* it an actual application of the statute before passing on its facial constitutionality. Here, they argue, the FTC has exercised statutory law enforcement powers for decades, and there is no need for the court to educate itself on the workings of the challenged statute.

**11.** I agree with the appellants that the constitutionality of section 5(b) of the Act is for this court, and not the agency, to decide. *See, e.g., Weinberger v. Salfi*, 422 U.S. 749, 764–67, 95 S.Ct. 2457, 2466–68, 45 L.Ed.2d 522 (1975) (where all possible nonconstitutional objections to denial of social security benefits have been eliminated, and the *sole* issue for decision is the constitutionality of a statutory requirement, ex-

haustion is unnecessary, because agency is without jurisdiction or competence to decide the constitutional question). I also agree that this case is somewhat unlike *Hastings*, where we dealt with a more complicated and untested statutory scheme. However, I would *not* foreclose the possibility that we might learn something from the application of the statute to these particular appellants that might aid us in deciding which, if any, of the powers conferred upon the Commission may be exercised consistent with the Constitution.

**12.** *Cf. Myers*, 303 U.S. at 50–51, 58 S.Ct. at 463–64 (the "long settled rule" that no one is entitled to judicial relief for a supposed or threatened injury until they have exhausted their administrative remedies "has been repeatedly acted on in cases where ... the contention is made that the administrative body lacked power over the subject matter") (footnote omitted).

tion doctrine in this context. First, the court might be able to avoid the needless decision of a constitutional question, because the plaintiff might prevail on nonconstitutional grounds before the administrative agency. *Id.* at 1261. Second, the court would be able to forestall frequent disruptions of administrative proceedings; disruptions that would "intolerably interfere with the agency's performance of its assigned task and with the pursuit of the administrative remedy granted by Congress." *Id.* The court considered the possibility of distinguishing between frivolous and non-frivolous constitutional claims, and applying the exhaustion doctrine only to the former. The court rejected this distinction, however, finding that "[h]alting or delaying an administrative proceeding whenever a party is able to allege a constitutional question that is not frivolous" would produce the very interference with agency processes that the exhaustion doctrine is designed to prevent. *Id.; see McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969) (one of the purposes of the exhaustion doctrine is to discourage the "frequent and deliberate flouting of administrative processes" that might "weaken the effectiveness of an agency by encouraging people to ignore its procedures"). The court therefore concluded, as a prudential matter, that the wisest course was to "allow the agency to proceed to a final determination and let the judicial determination of the constitutional question await the judicial review of the final agency action." 581 F.2d at 1261.

In *Rosenthal,* and in the numerous other cases applying the exhaustion doctrine to challenges to agency authority,[13] the courts have identified two exceptions to the general rule of exhaustion. The first exception, derived from the Supreme Court's decision in *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), permits immediate judicial review of a challenge to agency authority where the agency's assertion of jurisdiction "would violate a *clear right* of a petitioner by disregarding a *specific* and *unambiguous* statutory, regulatory, or constitutional directive." [14] The second exception permits immediate judicial review where postponement of review would cause the plaintiff irreparable injury. However, relying on the Supreme Court's pronouncement in *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974), courts have uniformly recognized that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." [15]

In the instant case, the appellants are plainly unable to invoke either of the above exceptions. First, the appellants cannot possibly maintain that the Commission's exercise of law enforcement powers is *clearly* unconstitutional. The status of independent agencies such as the FTC was upheld by the Supreme Court in *Humphrey's Executor v. United States,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), and the FTC has been exercising law en-

**13.** *See, e.g., Shawnee Coal Co. v. Andrus,* 661 F.2d 1083 (6th Cir.1981) (nonconstitutional challenge to authority of Secretary of Interior to issue certain cessation orders under the Surface Mining Control and Reclamation Act of 1977); *Babcock & Wilcox Co. v. Marshall,* 610 F.2d 1128 (3d Cir.1979) (constitutional challenge to authority of OSHA to obtain *ex parte* inspection warrants); *Bakersfield City School Dist. v. Boyer,* 610 F.2d 621 (9th Cir.1979) (constitutional challenge to authority of HEW to conduct enforcement proceedings); *Hunt v. Commodity Futures Trading Comm'n,* 591 F.2d 1234 (7th Cir.) (nonconstitutional challenge to authority of Commodity Futures Trading Commission to initiate enforcement proceedings), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *California ex rel. Christensen v. FTC,* 549 F.2d 1321 (9th Cir.) (nonconstitutional challenge to authority of FTC to conduct enforcement proceedings), *cert. denied,* 434 U.S. 876, 98 S.Ct. 227, 54 L.Ed.2d 156 (1977); *American Gen. Ins. Co. v. FTC,* 496 F.2d 197 (5th Cir.1974) (same); *but see Touche Ross & Co. v. SEC,* 609 F.2d 570 (2d Cir.1979) (plaintiff need not exhaust administrative remedies before bringing nonconstitutional challenge to authority of SEC to discipline accountants).

**14.** *Hunt,* 591 F.2d at 1236 (emphasis added); *see also Babcock & Wilcox,* 610 F.2d at 1138; *Rosenthal,* 581 F.2d at 1261.

**15.** *See, e.g., Rosenthal,* 581 F.2d at 1262; *California ex rel. Christensen,* 549 F.2d at 1323.

forcement powers free from successful constitutional challenge ever since that seminal decision. Although it is at least arguable that the Supreme Court might be persuaded to alter its current position, that possibility falls far short of establishing that the Commission has acted in such direct conflict with the Constitution as to warrant immediate judicial intervention. Second, the only injury alleged by the appellants is the cost of defending themselves in the pending Commission proceedings. It is clear beyond question, however, that litigation expenses standing alone do not constitute irreparable injury sufficient to warrant the disruption of ongoing agency proceedings.[16]

Given that neither of these two exceptions apply, I find no basis for departing from the general rule that challenges to agency authority must await exhaustion of available administrative remedies. Like the Seventh Circuit in *Rosenthal*, I believe that the advantages of adherence to the exhaustion doctrine in this context will ordinarily outweigh the interests of plaintiffs in obtaining immediate judicial review. First, the plaintiffs may prevail before the agency on independent grounds, thereby mooting the plaintiffs' challenge and rendering it unnecessary for the court to intervene.[17] Such a result would conserve judicial resources for those cases in which judicial involvement is absolutely necessary for resolution of the controversy. This interest in avoiding premature judicial involvement is heightened where the plaintiffs raise a *constitutional* challenge to agency action. In several different contexts, the Supreme Court has admonished courts not to decide important constitutional questions, and possibly invalidate congressional legislation, where a controversy may be resolved on some independent, nonconstitutional ground.[18] We would violate this di-

---

16. The appellants argue that this principle is at odds with *Better Government Association v. Department of State*, 780 F.2d 86, 94 (D.C.Cir. 1986), where we held that for the purpose of determining the degree of hardship to the plaintiffs from the withholding of judicial review on grounds of ripeness, the court must assume that the plaintiffs will prevail on the merits. *See* discussion in section II.B. *supra.* I perceive no such conflict. *Better Government* involved an application of the ripeness doctrine, not an issue of exhaustion. It would make no sense, in applying the exhaustion doctrine, to *assume* that plaintiffs will prevail on the merits given that one of the principal exceptions to the doctrine requires a litigant to *conclusively demonstrate* that the agency's assertion of jurisdiction would violate a clear right.

17. *Cf. Heckler v. Ringer*, 466 U.S. 602, 619 n. 12, 104 S.Ct. 2013, 2024 n. 12, 80 L.Ed.2d 622 (1984) (wisdom of exhaustion doctrine demonstrated by fact that plaintiffs' medicare claims, which were pursued in the administrative forum while their challenge to the denial of benefits was pending in court, "were denied [by the agency] on grounds not even related to the instructions and rule which they now seek to challenge in federal court").

18. *See, e.g., Jean v. Nelson*, 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985); *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 763, 772–73, 67 S.Ct. 1493, 1498, 1503–04, 91 L.Ed. 1796 (1947) ; *Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 136–37, 67 S.Ct. 231, 233–34, 91 L.Ed. 128 (1946); *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288,

346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

The appellants argue that the constitutional nature of their claim does not militate in favor of postponing judicial review. They point to the recent decision in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* — U.S. —, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), where the Supreme Court held that a First Amendment challenge to the authority of the Ohio Civil Rights Commission to bring an enforcement proceeding against a religious school was ripe for adjudication (although nonetheless barred by the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). Specifically, the Court wrote:

We think that any ripeness challenge to respondents' complaint is foreclosed by *Steffel v. Thompson* [415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ], and *Doran v. Salem Inn, Inc.* [422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) ]. *Steffel* held that a reasonable threat of prosecution for conduct allegedly protected by the Constitution gives rise to a sufficiently ripe controversy. If a reasonable threat of prosecution creates a ripe controversy, we fail to see how the actual filing of the administrative action threatening sanctions in this case does not. It is true that the administrative body may rule completely or partially in respondents' favor; but it was equally true that the plaintiffs in *Steffel* and *Doran* may have prevailed had they in fact been prosecuted.

106 S.Ct. at 2722 n. 1 (citations omitted).

The *Steffel* line of cases, however, is readily distinguishable. In those cases, the Court has

rective were we to pass on the constitutionality of section 5(b) of the Act when the appellants may well prevail before the Commission on one of their nonconstitutional defenses.

Second, I think it unwise to embrace an exception to the exhaustion doctrine that would permit interruption of ongoing agency proceedings whenever a litigant raises a non-frivolous challenge to the legitimacy of those proceedings. Such an exception would encourage litigants to bypass the orderly processes of administrative agencies and would intolerably interfere with the ability of those agencies to perform the tasks assigned to them by Congress.[19] The principal countervailing interest in favor of immediate judicial review is the litigant's interest in not being forced to defend itself in an allegedly unauthorized proceeding. That interest, however, is far less weighty than the court's interest in conserving its judicial resources and discouraging the flouting of administrative procedures. The litigant, of course, retains its right to challenge the final agency determination on the ground that the agency acted outside its statutory authority or in violation of the Constitution.

I recognize again that the decisions of this circuit, though acknowledging the "general rule of exhaustion" even in cases where the plaintiff's challenge goes to the validity of the administrative proceedings, *see Athlone Indus. v. Consumer Product Safety Comm'n,* 707 F.2d 1485, 1489 (D.C. Cir.1983), may have generated some confusion on the rule's applicability in this context. Most recently, in *Aluminum Co. of America v. United States,* 790 F.2d 938, 942 (D.C.Cir.1986), we refused to interrupt ongoing proceedings of the Interstate Commerce Commission to decide a nonconstitutional challenge to the Commission's authority to initiate those proceedings. We explicitly noted that the proceedings might result in a decision favorable to the plaintiff, thereby mooting its challenge to the validity of the proceedings. In *Atlantic Richfield Co. v. Department of Energy,* 769 F.2d 771 (D.C.Cir.1984) ("ARCO") and *Athlone,* however, we allowed the plaintiffs to bring their nonconstitutional challenges to agency authority in court without first exhausting their administrative remedies, even though we made no explicit finding that one of the two exceptions to the exhaustion doctrine applied.[20]

These cases, like *Hastings* and *Andrade,* are difficult to reconcile. And, like *Hastings* and *Andrade,* they underscore the

sanctioned interference with *state* proceedings in order to preserve the federal forum for adjudication of the federal claim. Here, in contrast, there is no need to preserve the federal forum against encroachment by the states, and hence no need to decide the constitutional question before the *federal* agency has had the opportunity to rule on the appellants' nonconstitutional defenses.

19. *Cf. Hunt,* 591 F.2d at 1236 (the exhaustion doctrine curbs "frequent, litigious interference with the administrative procedures established by Congress for achieving the agency's goals").

20. In *Athlone,* 707 F.2d at 1489, the court did place some emphasis on the fact that the plaintiff's co-defendant in the administrative proceedings had been able to extricate itself from those proceedings by obtaining an injunction from the Eighth Circuit. The court therefore concluded that it would be "unfair" and "incongruous" to require the plaintiff to submit to those very same proceedings. However, it is unclear from the opinion what weight the court placed on this "unique circumstance[ ]."

*ARCO* is also somewhat unique in that the plaintiff challenged *both* the authority of the agency to initiate enforcement proceedings *and* —assuming those proceedings were authorized—the authority of the agency to impose sanctions against it for refusing to obey discovery orders. 769 F.2d at 774–75. Thus, the court found that the plaintiff faced not only unrecoupable litigation expenses but also "the dilemma of having to chose [sic] between complying with allegedly ultra vires discovery orders—and thus revealing materials that otherwise would remain confidential—and flouting the orders and facing the consequences should the Department ultimately be found to have had the power to issue the orders." *Id.* at 783–84 (footnote omitted). Again, however, it is not clear from the opinion what weight the court placed on this factor. Moreover, plaintiffs who contend that agency enforcement proceedings are unauthorized will commonly face the "dilemma" of whether to comply with potentially ultra vires discovery orders, because an agency without authority to conduct enforcement proceedings obviously has no authority to conduct discovery. Thus, *ARCO* does not seem to be distinguishable on this basis.

flexibility of the exhaustion doctrine and the need to apply the doctrine "with 'an understanding of its purposes and of the particular administrative scheme involved.'" *ARCO*, 769 F.2d at 781 (quoting *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969)). I have attempted in this opinion to highlight those purposes of the exhaustion doctrine that will be served by adherence to the general rule on the particular facts of this case. Concededly, not *all* of the recognized purposes of the exhaustion doctrine will be furthered by invoking the doctrine in the instant case. Application of the exhaustion requirement, for example, will not permit the Commission to apply its expertise, because the appellants' challenge raises a purely legal question that is within the particular competence of this court. However, application of the exhaustion requirement *will* prevent the interruption of ongoing administrative proceedings and perhaps allow the Commission to resolve the present controversy without the need for judicial involvement. It is also possible that this court, by withholding review, will gain a better perspective on the exact nature of the agency process being challenged. These weighty interests are principally countered by the appellants' interest in avoiding litigation expenses, an interest that does not tip the scale in favor of immediate judicial review. For these reasons, I would adhere to the salutary rule of exhaustion, and affirm the District Court's dismissal of the appellants' complaint on that ground.

## V. Jurisdiction of the District Court Under *TRAC*

Because I would hold that the appellants' constitutional claim may not be raised in federal court until the appellants have exhausted their administrative remedies, I need not reach an issue considered at some length by the District Court; namely, whether the District Court would have had jurisdiction under the general federal question statute, 28 U.S.C. § 1331 (1982), to entertain a constitutional challenge to the exercise of law enforcement powers by the FTC. The Commission argues that our decision in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir.1984) ("*TRAC*"), in which we held that "where a statute commits review of agency action to the Court of Appeals [as it does in the case of FTC cease and desist orders], any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals," *id.* at 75 (footnote omitted) (emphasis in opinion), establishes that jurisdiction over such constitutional challenges lies exclusively in the court of appeals, and not in the district court under section 1331.

Although I need not pass on this contention, I do note that *TRAC* itself did not raise the situation presented by the instant case. In *TRAC*, we dealt specifically with a *mandamus* action to compel agency action unlawfully withheld; we did not consider whether district courts could properly assert jurisdiction over constitutional challenges to agency authority brought under section 1331. In the course of our *TRAC* opinion, we *did* consider briefly a small class of cases in which a litigant brought a constitutional challenge under section 1331 alleging agency bias and prejudgment, *see, e.g., Association of Nat'l Advertisers v. FTC*, 627 F.2d 1151 (D.C.Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980), and we held that such challenges, like challenges to agency action unlawfully withheld, were subject to the exclusive jurisdiction of the court of appeals. However, that limited holding was based on the fact that the challenges to agency bias and prejudgment were of the sort that a court of appeals would routinely consider on an appeal from final agency action. I need not stop to consider here whether a constitutional challenge could ever be so separate from the underlying agency proceedings that the district court would have jurisdiction under section 1331.[21] Under the principles articulated in

---

**21.** *Cf. FCC v. ITT World Communications*, 466 U.S. 463, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984) (because final orders of the Federal Communications Commission ("FCC") are subject to the exclusive jurisdiction of the courts of appeals, the district court was without jurisdiction to

the opinions issued today, it is doubtful in any event that such a "separate" constitutional challenge would be subject to review prior to the conclusion of the agency proceedings. Once the constitutional claim *was* subject to review, it would of course be brought before the court of appeals in conjunction with any nonconstitutional defenses to the final agency action.

Because the District Court's discussion of *TRAC* was unnecessary in light of our disposition of this appeal, I would vacate that portion of the District Court's opinion. *See Flynt v. Weinberger*, 762 F.2d 134 (D.C.Cir.1985) (vacating District Court's opinion on a mooted issue in order to clear the path for future relitigation of that issue).

## VI. CONCLUSION

I would affirm the District Court's decision dismissing the appellants' complaint for the reasons enunciated in this opinion. I would also vacate that portion of the District Court's opinion and holding pertaining to its jurisdiction under 28 U.S.C. § 1331 (1982).

*Affirmed.*

## VII. POSTSCRIPT

I acknowledge that the concurring opinion of Judge Green raises compelling considerations militating in favor of affirmance on grounds of ripeness. However, for the reasons that I have already given in the foregoing opinion, I believe that the appellants' suit is properly dismissed for failure to exhaust their available administrative remedies in the ongoing FTC proceeding.

I cannot agree with Judge Williams' contention that this court is without jurisdiction to entertain the appellants' claim. This very same contention was expressly

considered and rejected by this court in *Athlone,* 707 F.2d at 1489 n. 30. *Athlone* distinguished the Supreme Court's decision in *FTC v. Standard Oil Co.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980), and squarely held that the filing of an administrative complaint constituted a "final," judicially-reviewable determination that the agency had the authority to conduct an enforcement proceeding. *Athlone* was subsequently followed in *ARCO,* where the court asserted jurisdiction over a claim that the Department of Energy was without authority to initiate proceedings and impose discovery sanctions.[22] *See* note 20 *supra.* The principles firmly established in *Athlone* and *ARCO* represent the law of this circuit until the full court indicates otherwise.

Judge Williams relies heavily on this court's opinion in *Aluminum Co. of America v. United States,* 790 F.2d 938 (D.C.Cir. 1986) ("*ALCOA* "). *ALCOA,* however, did not even mention *Athlone* or *ARCO,* much less purport to overrule the explicit holding in *Athlone.* Indeed, a careful reading of *ALCOA* reveals that the court's opinion was far more limited than my concurring colleague suggests. In *ALCOA,* the court's principal focus was on whether it had jurisdiction to review an ICC determination that prolonged a pending proceeding "in one fashion rather than another." 790 F.2d at 942. Because the ICC's action amounted, at most, to a denial of *procedural* rights, the court concluded (unremarkably) that the agency determination was not sufficiently "final."

In the instant case, by contrast, we are faced with a claim that an agency has acted pursuant to a facially unconstitutional statute. The rights affected by the agency's assertion of jurisdiction in this case are

consider whether FCC action stemming from a final order was ultra vires).

**22.** I simply do not understand the suggestion in Judge Williams' concurring opinion that the court in *ARCO* "expressly declined to infer a statutory requirement of finality, 769 F.2d at 781 n. 63." The footnote to which Judge Williams refers addressed only the question whether the statute under which the agency

acted contained an exhaustion or ripeness requirement. The court concluded that there was no statutory requirement of exhaustion or ripeness; accordingly, it went on to consider whether the "court-made" doctrines of exhaustion and ripeness barred review. The court would never have reached these issues had it not—in accordance with *Athlone*—assumed that it had jurisdiction over the complaint.

thus far more substantial than those affected by the ICC's action in *ALCOA*. Of course, Judge Green and I have concluded that the hardship alleged by the appellants is insufficient, *in this case*, to warrant an exception to the *prudential* doctrines of exhaustion and ripeness. However, this is a far cry from asserting that the rights affected by the FTC's action are so insubstantial as to deny this court jurisdiction. Indeed, taken to its logical conclusion, the argument in Judge Williams' concurring opinion would deny this court jurisdiction to review even the most egregious assertion of agency authority, because, according to the concurrence, the "sole burden" imposed by the agency's action would be the expense of participating in an unauthorized administrative proceeding.

In sum, in my view, the analysis in Judge Williams' concurring opinion is both contrary to the law of this circuit and inconsistent with established principles of finality. The opinion ignores a long line of cases in which challenges to agency authority have been either addressed or dismissed on the *prudential* grounds of exhaustion or ripeness. *See, e.g., Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–52, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938) (challenge to NLRB's authority to issue complaint dismissed for failure to exhaust administrative remedies); cases cited in note 13 *supra*. I must reject my concurring colleague's attempt to rewrite the well-settled law in this area.

WILLIAMS, Circuit Judge:

Appellants challenge the Federal Trade Commission's commencement of an administrative proceeding under § 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45 (1982 & Supp. III 1985). Since the challenged agency action was not "final," within the meaning of § 10(c) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704 (1982), I would hold this suit barred on that jurisdictional ground, and

would not address the related prudential issues of exhaustion and ripeness.[1]

## I. FINALITY VS. EXHAUSTION AND RIPENESS

Perhaps the most telling commentary on the chaotic state of the law governing our threshold inquiry is Professor Davis's observation that

> [p]roblems of finality are in the area where the law of exhaustion joins or overlaps with the law of ripeness.... Finality may be a part of exhaustion, a part of ripeness, or a third subject; courts do not clarify the classification, for they need not.

4 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 26:10, at 458 (2d ed. 1983) (citation omitted). But while courts often mingle the three doctrines, they are analytically distinct. *Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1178 (D.C. Cir.1979) (Leventhal, J., concurring), *cert. denied*, 447 U.S. 921, 100 S.Ct. 311, 65 L.Ed.2d 1113 (1980); *see FTC v. Standard Oil Co.* ("*Socal*"), 449 U.S. 232, 243, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980) ("Socal and the Court of Appeals have mistaken exhaustion for finality."). The mingling is natural enough. All three serve the interests in agency autonomy and judicial economy. All depend, in varying degrees, on the view that further administrative activity (or inactivity) may give effective victory to the complaining party, thus obviating the need for judicial intervention. *See Ciba-Geigy Corp. v. EPA*, 801 F.2d 430, 434 (D.C.Cir. 1986); *Aluminum Co. of America v. United States* ("*Alcoa*"), 790 F.2d 938, 942 (D.C. Cir.1986) (Scalia, J.); *Bethlehem Steel Corp. v. EPA*, 669 F.2d 903, 908 (3d Cir. 1982). All to a degree balance those interests against a concern that a rogue agency must not unduly burden private parties. *See Socal*, 449 U.S. at 242–43, 101 S.Ct. at 494–95; *Ciba-Geigy*, 801 F.2d at 434; *Andrade v. Lauer*, 729 F.2d 1475, 1491, 1493 (D.C.Cir.1984).

But the distinctions remain important. First, there is a difference in focus. While

---

**1.** The ripeness doctrine, in extreme cases, is responsive to constitutional concerns and is jurisdictional, *see Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 n. 12 (D.C.Cir. 1986), but the constitutional component of ripeness is not at issue here. *Cf. Eagle-Picher Industries, Inc. v. EPA*, 759 F.2d 905, 915 (D.C.Cir. 1985).

exhaustion is directed to the steps a litigant must take, finality looks to the conclusion of activity by the agency. *See Bethlehem Steel,* 669 F.2d at 908. And while ripeness depends on the fitness of issues for judicial review, *see Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), finality in administrative law plays a role closely akin to the doctrine of the same name restricting interlocutory review of trial courts in the federal system, *see* 28 U.S.C. § 1291 (1982). For our immediate purposes, the more critical distinction is that while exhaustion and ripeness are judge-made *prudential* doctrines, *see McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 1515–16, 23 L.Ed.2d 194 (1969); *Eagle-Picher,* 759 F.2d at 915, finality is, where applicable, a *jurisdictional* requirement, *see Bell v. New Jersey,* 461 U.S. 773, 777–80, 103 S.Ct. 2187, 2190–92, 76 L.Ed.2d 312 (1983); *Mathews v. Eldridge,* 424 U.S. 319, 326–28, 96 S.Ct. 893, 898–99, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975).

Thus, a finding of finality (or of an applicable exception) is essential when the court's reviewing authority depends on one of the many statutes permitting appeal only of "final" agency action. *See, e.g.,* 5 U.S.C. § 704 (1982); 20 U.S.C. § 2851 (1982); 28 U.S.C. § 2342 (1982 & Supp. III 1985); 28 U.S.C. § 2344 (1982); 42 U.S.C. § 405(g) (1982). In this case, the finality requirement arises from § 10(c) of the APA, which provides in relevant part: .

> Agency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

5 U.S.C. § 704 (1982) (emphasis added).[2]

Professor Davis is certainly correct that courts, as a practical matter, often *do not*

worry about the differences between exhaustion, finality, and ripeness. But, since "[j]urisdiction is, of necessity, the first issue for an Article III court," *Telecommunications Research & Action Center v. FCC,* 750 F.2d 70, 75 & n. 24 (D.C.Cir.1984) (approved by full court) (citation omitted), one cannot accept his observation that they *need not* distinguish between them.

## II. Application of the Finality Doctrine

Administrative orders are final when "they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." *Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948) (citations omitted); *accord, Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209–10, 27 L.Ed.2d 203 (1970); *Alcoa,* 790 F.2d at 941 (Scalia, J.); *Trans-Pacific Freight Conference of Japan v. Federal Maritime Board,* 302 F.2d 875, 877 (D.C.Cir.1962). Though that language itself leaves critical issues open, the precedents resolve them clearly enough for this case.

First, a long line of decisions establishes that the expense of an administrative proceeding—the sole burden that appellants allege here—does not qualify as the imposition of a burden or denial of a right. As we said in *Alcoa:*

> [T]hese are not the sorts of rights and obligations to which the quoted test refers. It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding.

790 F.2d at 941 (citing *Socal,* 449 U.S. at 241–43, 101 S.Ct. at 493–95; *Peter Kiewit Sons' Co. v. Army Corps of Engineers,* 714 F.2d 163, 168 (D.C.Cir.1983)). Mere exposure to litigation stands in stark con-

---

2. Statutes providing for review—and thus encompassed by the first clause of § 704 ("agency action made reviewable by statute")—are typically construed to require finality, *see Car-* *ter/Mondale Presidential Committee, Inc. v. FEC,* 711 F.2d 279, 284–85 n. 9 (D.C.Cir.1983), but that is an issue we need not face.

trast to cases where administrative action in the course of a proceeding will inflict an irreparable injury, effectively "deny[ing] a right." For example, in *Gulf Oil Corp. v. Department of Energy*, 663 F.2d 296 (D.C. Cir.1981), the subjects of a proceeding learned that agency employees had destroyed documents and engaged in questionable *ex parte* contacts. The agency severely restricted their efforts at discovery into the details of this chicanery. Given the more or less interminable nature of the proceedings, the plaintiffs argued—and we agreed—that at the end it would be impossible to reconstruct the events and that therefore review of any adverse final decision would not constitute an adequate legal remedy. *Id.* at 307. Thus, just as the district court's refusal to require plaintiffs to post security in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), represented a final determination of defendants' right to such security pending trial, *id.* at 546, 69 S.Ct. at 1225–26, so the court viewed the agency's conduct as a final determination of the *Gulf Oil* plaintiffs' right to meaningful discovery.[3]

Second, an administrative act is not "final" merely because it constitutes the agency's last word on a discrete legal issue in the course of a proceeding. In *Socal*, for example, the Commission had initiated enforcement proceedings, predicated on an assertion that it had "reason to believe" that Socal was violating the FTC Act. The Court, acknowledging that the issuance of the complaint was "definitive on the question whether the Commission avers" such a threshold finding, held that the averment was nonetheless not "definitive" in the relevant sense. 449 U.S. at 241, 101 S.Ct. at 494. Similarly, the fact that the Commission is most unlikely to change its position on the constitutionality of a § 5 proceeding—especially as agencies generally cannot declare their own enabling acts unconstitutional, *see Johnson v. Robison*, 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974)—does not convert the Commission's assertion of jurisdiction into final agency action.

Appellees attempt to distinguish *Socal* on the ground that further proceedings might have altered the Commission's position on the existence of "reason to believe" in a violation and thereby mooted the issue. *See also post* at 756–57. But the Court's analysis forecloses that avenue. It viewed the preliminary finding as a decision whose defects the Commission could not cure by later accumulations of evidence. It was, thus, frozen in time, and would be independently reviewable (assuming it was not "committed to agency discretion by law," 5 U.S.C. § 701(a)(2)) when and if the Commission issued a cease-and-desist order. 449 U.S. at 245, 101 S.Ct. at 496. There as here, mooting of the issue depended upon the Commission's finding for petitioner on other grounds, not upon its having a change of heart on the disputed point.

Third, an agency's decision to initiate proceedings does not become final merely because the challenger attacks the agency's jurisdiction, even where the attack raises a pure question of law. In *Alcoa*, for example, a shipper who successfully challenged an intrastate rail rate before a state railway commission sued to enjoin the Interstate Commerce Commission's assumption of original jurisdiction over the dispute. 790 F.2d at 939–40. The jurisdictional dispute turned on a purely legal question: whether the challenge was "pending" before the state commission on a particular date, within the meaning of the ICC's order assuming "original jurisdiction over all intrastate rail rate matters pending" before that state commission. *Id.* at 940. Observing that the jurisdictional nature of the challenge did not "make any difference," we held that the agency action was not final. *Id.* at 942. *See also Association of National Advertisers*, 627 F.2d at 1178 (Leventhal, J., concurring).

---

**3.** The *Gulf Oil* court might conceivably have fashioned an adequate legal remedy that would have obviated the need for immediate review: it could have awaited the final outcome of the proceeding and then resolved in the subjects' favor all factual questions whose resolution the agency's intransigence obstructed. The court did not, however, consider that option.

The constitutional character of the present challenge raises special issues but does not render the Commission's decision any more final. To be sure, since the Commission in all likelihood cannot pass on the constitutionality of its own enabling statute, *see Johnson v. Robison,* 415 U.S. at 368, 94 S.Ct. at 1166, denial of immediate review does not serve the purpose of enabling the Commission "to correct its own mistakes and ... apply its expertise." *Socal,* 449 U.S. at 242, 101 S.Ct. at 494 (citing *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2466–67, 45 L.Ed.2d 522 (1975)). In addition, petitioners claim that subjection to an unconstitutional proceeding constitutes a peculiarly offensive burden from which they should be relieved as promptly as possible. However, as noted above, the *Socal* Court assumed that the Commission would not alter its position on the challenged determination, yet it saw no reason to relax the customary finality rule. And, even if we accept the dubious proposition that unconstitutional burdens are *ipso facto* "heavier" than those of statutory illegality,[4] the constitutional dimension of appellants' burden entails a concern that militates powerfully against immediate review: the "fundamental rule of judicial restraint," forbidding resolution of constitutional questions before it is necessary to decide them. *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering,* 467 U.S. 138, 157–58, 104 S.Ct. 2267, 2278–79, 81 L.Ed.2d 113 (1984); *see Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). It is hard to imagine an instance more strongly compelling adherence to that rule than a challenge to the constitutionality of independent agencies. *Cf. Hospital Corp. of America v. FTC,* 807 F.2d 1381, 1392–93 (7th Cir.1986).

Neither *Atlantic Richfield Co. v. Department of Energy ("ARCO"),* 769 F.2d 771 (D.C.Cir.1984), nor *Andrade v. Lauer,* 729 F.2d 1475 (D.C.Cir.1984), two of the three cases relied upon most heavily by appellants, is to the contrary. The analysis of each was based on exhaustion, not finality. *Andrade* involved an agency action—the firing of employees pursuant to a reduction in force—that was clearly final (although the procedures were not exhausted), and *ARCO* expressly declined to infer a statutory requirement of finality, 769 F.2d at 781 n. 63.[5]

The only contrary authority from this court is *Athlone Industries, Inc. v. Consumer Product Safety Commission,* 707 F.2d 1485 (D.C.Cir.1983), which relegated to a footnote the conclusion that *Socal* did not bar interlocutory review of a challenge to an agency's jurisdiction to initiate enforcement proceedings. 707 F.2d at 1489–90 n. 30. We distinguished *Socal* on the ground that

> [b]y filing a complaint in the present case, the Commission, for all practical purposes, made a final determination that such proceedings were within its statutory jurisdiction.... Thus, with respect to the issue we address, the Com-

---

**4.** In distinguishing *Alcoa,* Judge Edwards suggests that the constitutional nature of the challenge here obviates the finality requirement or at any rate dilutes it. *Ante* at 744–45. In fact, the cases seem to apply finality requirements to constitutional claims with full force. *See, e.g., Peter Kiewit Sons' Co. v. Army Corps of Engineers,* 714 F.2d 163, 169 (D.C.Cir.1983) (due process claims) (citing other cases). Judge Edwards's concern for relaxing finality in cases involving "the most egregious assertion of agency authority," *ante* at 745, is traditionally dealt with by the exception for cases involving the violation of a "clear right." *See infra* pp. 749–750.

**5.** *ARCO* rejected the contention "that [42 U.S.C. § 7193(c)] precludes judicial review of action by the Office of Hearings and Appeals unless

and until that action is appealed to the Commission and it announces *a final decision.*" 769 F.2d at 781 n. 63 (emphasis added). The court cited *Gulf Oil,* 663 F.2d at 310, where we rejected the identical contention, "that *finality* is necessary in this case because Congress intended there be judicial review only of *final* remedial orders," *id.* (emphasis added). Thus, the *Gulf Oil* court concluded, as the *ARCO* court must have, that there was no congressional "intent to absolutely bar judicial intervention in advance of a *final* order." *Id.* at 311 (emphasis added). *See also id.* at 310 n. 79 (noting that the finality requirement of 5 U.S.C. § 704 was inapplicable, but that "[a] court may of course as a prudential matter refrain from reviewing *nonfinal* agency action") (emphasis added).

mission has taken a definitive position . . . .

*Id.* To the extent that the *Athlone* court found finality simply on the basis of an expectation that the agency would not reconsider the challenged ruling itself, it seems both in direct conflict with the Supreme Court's *Socal* opinion and squarely contradicted by Justice Scalia's later (and more carefully considered) opinion in *Alcoa.*[6]

It is quite true that courts have occasionally disposed of a case on exhaustion grounds even though the agency decision clearly or arguably lacked finality. *See ante* at 740 n. 13, 744–745. Such decisions do not help in defining the finality requirement; it is well settled that cases in which jurisdiction is assumed *sub silentio* are not binding authority for the proposition that jurisdiction exists. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 918, 79 L.Ed.2d 67 (1984) (quoting *Hagans v. Lavine,* 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 1377 n. 5, 39 L.Ed.2d 577 (1974)); *Center for Auto Safety v. NHTSA,* 793 F.2d 1322, 1342 (D.C.Cir.1986) (Scalia, J., dissenting).

III. Exceptions to the Finality Doctrine

Review of nonfinal agency action is available in "the most exceptional circumstanc-

es." *Peter Kiewit Sons' Co. v. Army Corps of Engineers,* 714 F.2d at 168–69 (quoting 4 K. DAVIS, *supra,* § 26:10, at 460); *see Alcoa,* 790 F.2d at 942; *Gulf Oil Corp. v. Department of Energy,* 663 F.2d at 312–13; *Physicians National House Staff Association v. Fanning,* 642 F.2d 492, 495–99 (D.C.Cir.1980) (en banc), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). The classic and oft-quoted formulation is that of Judge Leventhal:

[A] federal court . . . [may] take jurisdiction before final agency action . . . only . . . in a case of "clear right" such as outright violation of a clear statutory provision [citing *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)] or violation of basic rights established by a structural flaw, and not requiring in any way a consideration of interrelated aspects of the merits. . . .

*Association of National Advertisers, Inc. v. FTC,* 627 F.2d 1151, 1180 (D.C.Cir.1979) (Leventhal, J., concurring) (emphasis omitted), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). In this case, it is quite plain that neither exception applies.[7]

---

**6.** If there is any factual difference between *Athlone* (or this case) and *Alcoa,* it is that in *Alcoa* the assertion of jurisdiction had the effect also of vacating a pre-existing order of a state commission and forcing the plaintiff to *re*litigate the same issues before the federal agency. Thus, the burden imposed by the challenged action was greater in *Alcoa* than in *Athlone* (or in this case).

*Ciba-Geigy Corp. v. EPA,* 801 F.2d 430 (D.C.Cir.1986), declined to consider finality as an issue independent of ripeness. Even viewed as a finality decision, *Ciba-Geigy* is clearly distinguishable: the plaintiff was exposed to the choice between compliance with a regulatory directive that it asserted was illegal and risking serious civil and criminal penalties. The court expressly distinguished *Socal* on the ground that there litigation expenses were the only alleged hardship from delaying review. *Id.* at 438–39.

**7.** My colleagues quite wisely reject a rather fierce concept of finality, described by Judge Green as the view "that a decision to initiate an administrative complaint is always nonfinal and that this court is without jurisdiction to review

it." *Post* at 756 (footnote omitted); *see also ante* at 744–45. Such a view of finality is certainly not mine. Initiation of a complaint could obviously fall within the "clear right" exception (as well as the one for "structural flaws," if it still exists) and thus be justiciable despite the finality requirement.

Indeed, initiation of a complaint might in some circumstances impose a burden—beyond that of mere litigation—severe enough to meet the finality requirement. *Cf. supra* p. 747 (discussing *Gulf Oil Corp. v. Department of Energy,* 663 F.2d 296 (D.C.Cir.1981)). Judge Green's treatment of the "hardship" aspect of ripeness seems congruent with the traditional analysis of burdens for finality purposes. It is this very congruence that has led courts to discuss finality solely as an *aspect* of ripeness. *See, e.g., Ciba-Geigy Corp. v. EPA,* 801 F.2d at 434–38 & n. 7 (addressing only ripeness even though statutory finality requirement applied); *Public Citizen Health Research Group v. Commissioner,* 740 F.2d 21, 30–35 (D.C.Cir.1984) (apparently applying finality doctrine and fitness prong of ripeness interchangeably); *Western Union*

That the clear-right exception is unavailable is self-evident.[8] Appellants assert that § 5 of the FTC Act violates article II of the Constitution by purporting to vest executive authority in officials who are beyond the President's control and supervision. *See* U.S. CONST. art. II, § 1, cl. 1, 3. Little in the law is clearer than the proposition that petitioners' right, if any, is not clear. *See Bowsher v. Synar,* — U.S. —, 106 S.Ct. 3181, 3186–89 & n. 4, 92 L.Ed.2d 583 (1986); *Humphrey's Executor v. United States,* 295 U.S. 602, 628–32, 55 S.Ct. 869, 874–75, 79 L.Ed. 1611 (1935).

The structural-flaw exception is even less promising. Even Judge Leventhal, who first identified it as a separate exception, cast doubt on its continued vitality, characterizing it as "residu[al]." *Association of National Advertisers,* 627 F.2d at 1181. Since then, this circuit's only case invoking the structural-flaw exception, *Gulf Oil Corp. v. Department of Energy,* 663 F.2d at 312–13, is, for the reasons given above, more readily understood as a case where the agency's conduct represented a final determination of a collateral right because review of any ultimate adverse judgment could not adequately protect the plaintiffs' rights, *cf. Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949).[9] It is, in fact, hard to see any need for an "exception" for "structural flaws," when the concept of final determination of a collateral right allows a timely judicial cure. *Peter Kiewit Sons' Co. v. Army Corps of Engineers* also raises doubts about the survival of any structural-flaw exception. Although it involved allegations of congressional interference with agency proceedings and thus invited consideration of the structural-flaw exception, the court never

even mentioned it, instead discussing and rejecting only the clear-right exception. *See* 714 F.2d at 169. At any rate, even if the exception survived, simple initiation of enforcement proceedings in the face of a jurisdictional attack could not, alone, qualify as a "structural flaw"; mere subjection to the proceeding itself is not an injury incurable by review at the completion of the agency's work.

\* \* \*

I would therefore affirm for want of final agency action within the meaning of 5 U.S.C. § 704.

**JOYCE HENS GREEN, District Judge:**

In view of my colleagues' separate opinions, both of which note and discuss at some length the confused and often contradictory nature of the law of this circuit concerning the related doctrines of finality, exhaustion, and ripeness, I hesitate to add yet another voice to the debate. I write separately, however, to explain why I believe that the constitutional question posed by this case is not yet ripe for review, and why, in my view, the ripeness doctrine provides the soundest basis for the result we reach today.

I

Appellants are currently the subjects of administrative proceedings initiated by the Federal Trade Commission ("FTC" or "Commission") under section 5 of the FTC Act, 15 U.S.C. § 45 (1982), which authorizes the Commission to prosecute complaints against persons believed to be violating the Act through unfair competition, or unfair and deceptive trade practices. Appellants contend that the exercise of such prosecu-

---

*Telegraph Co. v. FCC,* 665 F.2d 1112, 1123–25 & n. 17 (D.C.Cir.1981) (applying ripeness analysis to final-order provision). Despite the overlap, finality is a separate requirement which, because of its jurisdictional character, must be addressed first.

As noted, *supra* note 4, the clear-right exception is the rubric under which traditional finality analysis meets Judge Edwards's concern about "egregious assertion[s] of agency authority."

**8.** Here I assume *arguendo* that the clear-right exception could apply to alleged violations of

constitutional, rather than statutory, mandates. *But see Gulf Oil,* 663 F.2d at 313 n. 88 (dictum that clear-right exception is not applicable because plaintiffs "do not point to any clear and unambiguous *statutory* mandate underlying their claim") (emphasis in original).

**9.** *Gulf Oil,* moreover, held that there was no statutory finality requirement, 663 F.2d at 310–11, and considered finality only as a component of ripeness.

torial authority by an agency not subject to the direct supervision and control of the President violates Article II of the Constitution, as well as separation of powers principles, and they therefore sought an injunction against further prosecution of the proceedings against them. The District Court, however, declined to reach the merits of their constitutional claim, finding that it was not yet ripe for review. Although the other members of this panel affirm the District Court's judgment of dismissal, they do so for reasons different from those relied upon by the lower court, which I find controlling in this case.

It is of course a fundamental tenet of administrative law that "a court should be loath to interfere, by means of injunction, with ongoing [agency] proceedings." *Hastings v. Judicial Conference of the United States,* 770 F.2d 1093, 1102 (D.C.Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 3272, 91 L.Ed.2d 562 (1986). Administrative agencies are "entitled to a measure of comity sufficient to preclude disruptive injunctive relief by federal courts absent a showing that serious and irremediable harm will otherwise result." *Id.* Ripeness is one of the judicial doctrines, along with exhaustion and finality, designed, in part, to prevent such disruption. In *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court announced the now familiar two-part test for determining whether a challenge to administrative action is ripe for review. The *Abbott Laboratories* formulation requires courts "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. Like the District Court, I conclude that appellants' constitutional challenge satisfies the first of these two prongs, but founders on the second and is therefore unripe. Unlike my colleagues on this panel, however, I believe that the ripeness doctrine presents the only bar to immediate judicial consideration of appellants' claims, as the policies and purposes underlying the finality and exhaustion requirements do not dictate further postponement of judicial review.

There are, as Judge Edwards notes, areas of overlap between the exhaustion and ripeness doctrines. Both incorporate what might be termed "administrative refinement" concerns that spring in equal measure from the desire, on the one hand, to preserve agency autonomy, and the recognition, on the other hand, that there are limits to judicial competence. Thus, the exhaustion doctrine is designed in part to permit an agency to formalize or crystallize its policies, detect and correct its errors, develop a factual record where necessary, and apply its expertise where appropriate. *Athlone Industries, Inc., v. Consumer Product Safety Commission,* 707 F.2d 1485, 1488 (D.C.Cir.1983). Similarly, under the ripeness doctrine's "fitness of the issues" prong, courts must determine first whether the challenge to the agency's action or proceedings raises purely legal questions (which are presumptively suitable for judicial review) or questions requiring further factual development, and second whether either "the court or the agency would benefit from the postponement of review until the agency action or policy in question has assumed either a final or more concrete form." *Better Government Association v. Department of State,* 780 F.2d 86, 92 (D.C.Cir.1986).

These concerns, whether cast in exhaustion or ripeness terms, have been satisfied in the present case. Here, as in *Abbott Laboratories,* appellants have raised a purely legal question—namely, whether an independent agency, in this case the FTC, can exercise prosecutorial or executive powers. There is not even a suggestion, as there was in *Abbott Laboratories,* that the constitutional validity of the agency's exercise of such authority might vary according to the circumstances of each prosecution, or that the validity of the exercise of such authority may be more readily assessed in the context of a concrete factual setting. *Cf. Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515–16. On the contrary, the FTC makes no such argument nor does it appear that it could, as the Commission has exercised its law enforcement powers for decades and, accordingly, those powers are

both well-known and well-defined.[1] Additionally, no purpose would be served by allowing the Commission an opportunity to correct its own mistakes or apply its expertise here, since the agency enjoys no expertise in matters of constitutional law, *see Weinberger v. Salfi,* 422 U.S. 749, 767, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and in any event may not declare its own enabling statute unconstitutional. *See Johnson v. Robison,* 415 U.S. 361, 368, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974) (agencies generally cannot pass judgment on constitutionality of their own enabling acts). The possibility that the Commission will renounce its decades-old practice of initiating and prosecuting section 5 complaints as a result of the constitutional challenge advanced by appellants in the ongoing administrative proceedings below is simply too remote to contemplate. Accordingly, the FTC's exercise of such authority here is sufficiently final and concrete to satisfy the first prong of the ripeness doctrine.

Turning then to the ripeness doctrine's "hardship to the parties" inquiry, appellants have identified the cost of defending themselves in allegedly unconstitutional administrative proceedings as the principal harm they will suffer if this court withholds review. The Supreme Court has made clear, however, that such a showing of hardship is generally insufficient to warrant the interruption of ongoing agency proceedings. In *Federal Trade Commission v. Standard Oil Co. of California,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) ("*Socal*"), the Court observed that litigation and its accompanying expense and annoyance is one of the costs of living under government, and held that such expense, even if substantial and unrecoupable, does not constitute irreparable injury.

*Id.* at 244, 101 S.Ct. at 495. Thus, this court may not intrude on ongoing FTC proceedings merely to save appellants from the costs of defending themselves before the agency. Indeed, if the expense of such a defense were sufficient to satisfy the second prong of the ripeness test, that half of the test would be rendered superfluous in all cases involving challenges to ongoing administrative proceedings, since there are always costs associated with participating in such proceedings.

Appellants attempt to distinguish *Socal* on the ground that the challenge raised in that case implicated the underlying merits of the FTC proceedings, while here the constitutional challenge is entirely unrelated to the merits of the administrative complaint currently pending against them. The nature of a litigant's disagreement with agency proceedings, however, does not augment or diminish in any significant way the degree of hardship that flows from the obligation to participate in those proceedings. Rather, the distinction appellants make highlights an essential difference, discussed at length below, between the ripeness doctrine on the one hand, and exhaustion and finality on the other. The nature of appellants' challenge is such that further exhaustion is essentially futile, since the agency will not and cannot alter its determination that it possesses the prosecutorial authority it seeks to exercise here. The fact that appellants suffer no hardship other than the expense and bother of litigating before the agency in no way renders further exhaustion any less futile, or the agency's assertion of its authority any less final, thus neither the exhaustion nor finality doctrines should bar judicial review of that challenge. Because the na-

---

**1.** Judge Edwards suggests that this court "may learn something from the application of the statute to these particular appellants that may aid us in deciding which, if any, of the powers conferred upon the Commission may be exercised consistent with the Constitution." *Ante* at 739 n. 11. He does not indicate, however, how the conclusion of the administrative proceedings challenged by these appellants will in any way shed additional light on the constitutional question before us, and acknowledges elsewhere that "there is no need for factual development

by the agency, because the exact nature of the law enforcement powers exercised by the Commission are well-known, and *will not be clarified in the administrative proceedings.*" *Id.* at 739 (emphasis added). In any event, the fact that the justification for an agency's action might conceivably vary with different facts is essentially irrelevant when, as here, the parties agree that the question at issue is a purely legal one. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967).

ture of appellants' challenge does not increase the expense of participating in those proceedings, however, and because the ripeness test always requires some showing of harm greater than mere litigation expense, the distinction appellants draw between this case and *Socal* does not buttress their claim that the constitutional challenge they seek to litigate is ripe.

Appellants also argue that this court's failure to reach the merits of their claims will deprive them of their right to be free from unconstitutional, coercive prosecutions, and that unless their constitutional challenge is adjudicated before that prosecution concludes, this right will be irretrievably lost. This court's decision in *Hastings*, however, effectively disposes of this contention. In *Hastings*, a federal judge attacked the constitutionality of the Judicial Councils Reform and Judicial Conduct Disability Act of 1980, both on its face and as to those provisions authorizing informal fact-gathering that had been invoked against him. With respect to these latter provisions, Judge Hastings, like appellants here, presumably lost his right to be free from an allegedly unconstitutional investigation into his conduct, yet this court found that he had not demonstrated a sufficiently serious and irreparable injury to justify interruption of the ongoing proceedings. 770 F.2d at 1102–03. Indeed, that portion of the decision addressing Judge Hastings' challenge to the statutory provision invoked against him is virtually indistinguishable from the present dispute. Like appellants here, Judge Hastings raised a constitutional challenge to the underlying authority of a tribunal to initiate proceedings against him. The court in *Hastings* noted, however, that the challenged proceedings could terminate at any number of points before sanctions might be imposed, and that Judge Hastings could raise his constitutional challenge any time he was faced with an immediate threat of injury. *Id.* at 1102. In addition, Judge Hastings was not faced with the dilemma of whether, on the one hand, to change his behavior and comply with a law or regulation and thereby forego an advantage he might otherwise have gained, or on the other hand, to re-

fuse to comply and risk imposition of sanctions that would later be upheld. *Id.* So too here, the proceedings against appellants may terminate before any penalties or sanctions are imposed. Appellants are not faced with a choice of changing their behavior to comply with the agency's requirements or risking imposition of additional sanctions for their failure to do so— even if the FTC issues a cease and desist order, appellants need not comply with it unless and until this court places its imprimatur on it or appellants fail to take a timely appeal. *See* 15 U.S.C. § 45(g). And appellants are free to raise their constitutional objections in any suit seeking review of the Commission's final order. Like Judge Hastings' claims, appellants' contention that they will be subjected to the burden and expense of defending themselves in allegedly unconstitutional proceedings is an insufficient showing of harm to demonstrate that this case is ripe for judicial review.

Nor does *Better Government Association v. Department of State*, upon which appellants rely, compel a different result. In that case, this court found that a challenge to guidelines used by certain agencies to determine whether to grant Freedom of Information Act ("FOIA") fee waivers was ripe for review, even though the appellant non-profit groups were not challenging a specific fee waiver denial. As appellants' facial attack on the guidelines raised purely legal questions, it was "presumptively suitable for judicial review." 780 F.2d at 92. In addition, because the agencies stated that the guidelines governed and would continue to govern their treatment of fee waiver requests, the guidelines were final agency action. *Id.* at 93. Finally, the court concluded that the guidelines had a "direct and immediate impact" on the appellants because their "primary conduct"—publicizing governmental choices and highlighting possible abuses— made access to the information they sought through FOIA "vital to their organizational missions." *Id.* Contrary to what appellants here appear to believe, however, *Better Government* did not hold that chal-

lenges to agency action that raise purely legal questions are presumptively ripe. Rather, the court found that such challenges will most likely satisfy the "fitness of the issues" prong of the ripeness test. Appellants' reliance on *Better Government* again founders on the second prong of that test. Although appellants suggest that they suffer greater harm than did the appellants in *Better Government*, the FTC's actions here have not had an immediate and direct impact on appellants' *primary* conduct—they remain free to engage in any business practices the FTC challenges in its administrative proceedings. By contrast, the court found in *Better Government* that the guidelines had a direct and immediate effect on the appellants' ability to investigate government activities because the appellants routinely made FOIA requests that were vital to their organizational goals, and would be unable to continue to do so if agencies did not grant them fee waivers. *Id.* The court further noted that while the financial capabilities of an organization normally would not influence the court's assessment of hardship, such a consideration was appropriate in that case because Congress had expressly determined that financial constraints should not impede the access of FOIA requesters such as the appellants to information. *Id.* at 93–94.

Finally, appellants rely on *Andrade v. Lauer*, 729 F.2d 1475 (D.C.Cir.1984), a decision which, at first blush, is not easily reconciled with the *Hastings* opinion. In *Andrade*, the Department of Justice announced plans to implement a reduction in force ("RIF") and phased out one of its divisions, eliminating the positions of seven of the 28 attorneys who worked in it. All 28 attorneys filed suit, challenging the RIF of both statutory and constitutional grounds. This court affirmed the dismissal of the complaint brought by the 21 lawyers who had not yet lost their jobs, concluding their suit was not yet ripe. *Id.* at 1480–84. With respect to the seven who had lost their jobs, the court dismissed their statutory claims for failure to exhaust their administrative remedies, noting that loss of employment was an insufficient injury to warrant interference with Congress' scheme for federal employee relations. *Id.* at 1488–90. However, the court did not require the seven appellants to exhaust their administrative remedies before proceeding in court with their constitutional challenges. The court found that the purposes of exhaustion would not be served in such a case because (1) the constitutional claim could not have been raised in the administrative grievance procedures; (2) judicial resolution of that claim would not do violence to Congress' administrative scheme, which was not designed to handle such a claim; (3) the administrative bodies involved in the grievance procedure possessed no expertise in handling constitutional claims; and (4) resolution of the claim did not require factual development. *Id.* at 1491–92. In *Andrade*, therefore, the court permitted judicial review of appellants' constitutional claims without first requiring them to pursue their nonconstitutional challenges in the ongoing administrative proceedings. That of course is precisely the ruling appellants argue for in this case.

I agree with appellants that if this case is analyzed only in terms of exhaustion, *Andrade* dictates that we find their claims reviewable. Here, as there, appellants' constitutional claims cannot be raised in the administrative proceedings; the agency lacks the necessary expertise to resolve such claims; judicial resolution of the claims would not do violence to Congress' administrative scheme because that scheme does not envision administrative resolution of such issues; the claims themselves do not require further factual development as they raise purely legal questions; and there is considerable public interest in resolving those claims as the constitutional violation, if there be one, is continuous. As in *Andrade*, therefore, the underlying purposes of the exhaustion requirement are so little served by postponement of review that the requirement should not bar judicial consideration of the claims presented. *See also Athlone Industries*, 707 F.2d at 1488–89 (exhaustion not required where challenge to agency's authority raised purely

legal question requiring neither factual development nor agency expertise, question of statutory interpretation is for court not agency, and agency was unlikely to change its decision). It is for this reason that I cannot join the opinion of Judge Edwards, for as I see it, the inherent flexibility of the exhaustion doctrine militates in *favor* of judicial review in a case such as this, where the doctrine's principal concerns of administrative expertise and the facilitation of judicial review are simply not implicated. Indeed, consideration of the hardship to the party seeking judicial relief seems most relevant when the other factors in the exhaustion calculus dictate postponing review: where those factors actually tend to favor review, it seems anomalous to nevertheless require exhaustion simply because the hardship of submitting to the administrative proceedings is not especially onerous.

*Andrade* highlights the sliding scale nature of the hardship factor in exhaustion cases, and at the same time illustrates an important distinction between exhaustion and ripeness analysis. Implicit in the requirement of exhaustion is the recognition that Congress, in establishing certain administrative procedures, has already balanced the harms and benefits to the litigant and the public of requiring participation in these procedures. To excuse compliance with those procedures would in effect be to disregard a congressional determination of the proper balance to be struck. In *Andrade*, the congressionally mandated grievance system obviously contemplated that federal workers might be dismissed, but nevertheless required workers who lost their jobs in a RIF to submit certain challenges to personnel decisions to the grievance process before they could seek judicial relief or be reinstated. For a court to permit a discharged employee to bypass those procedures because of the hardship attendant on a loss of employment would be to disregard Congress' judgment that such hardship is outweighed by the government's interest in an efficient federal workforce. No similar disrespect of a co-equal branch of government, however, is implied when a court waives compliance with an administrative procedure that is neither intended nor able to resolve the claims presented. Thus, in *Andrade*, while the court deemed loss of employment an insufficient showing of harm to excuse a failure to exhaust the grievance procedure with respect to the appellants' nonconstitutional claims, this otherwise insufficient hardship was *not* deemed a barrier to judicial review of constitutional questions that the grievance system was not designed to resolve. So too here, while appellants' litigation expense would not be sufficient to excuse their failure to exhaust if the purposes of the exhaustion doctrine were otherwise served by postponement of review, when further exhaustion would serve no real purpose, the relatively insignificant nature of that expense should not bar judicial review.

Ripeness, by contrast, is a two-part test that always requires some showing of hardship. The doctrine is typically not concerned with respecting congressional determinations as to the relative balance of specific harms and interests, but focuses instead on "the institutional relationships of courts and agencies, and the competence of courts to resolve disputes without further refinement of the issues." E. GELLHORN & B. BOYER, ADMINISTRATIVE LAW AND PROCESS 319 (1981). Since administrative agencies, as autonomous bodies, always have an interest in avoiding judicial interruption of their proceedings, courts require some showing of hardship to warrant judicial intrusion into the agency's domain, even where the issues are otherwise generally fit for review. Indeed, that is the teaching of *Hastings*, where the court did not suggest that Judge Hastings' challenge to the validity of that portion of the statute invoked against him was not fit for review, but nonetheless found the challenge unripe because he had not alleged sufficient harm. As with the exhaustion doctrine, the level of harm necessary to demonstrate that a case is ripe for review may vary depending upon the level of administrative refinement of the issues. But, while the absence of any significant harm does not bar judicial review under the exhaustion doctrine where that doctrine's purposes are other-

wise not served by postponement, a lack of such harm does stand as a barrier under the *Abbott Laboratories* formulation of the ripeness test, as that test established hardship as an independent requirement. Nor is this surprising, given the ripeness doctrine's concern for preventing judicial encroachment on administrative autonomy: without the requirement of some showing of hardship, courts could interrupt agency proceedings whenever judges felt competent to decide the question under agency consideration. Such a rule would make agencies but a poor relation of the courts, reducing their function in many instances to the mere collection of data and refinement of issues for judicial resolution. Without establishing what minimum showing of hardship is required when the issues are otherwise fit for review, it is enough for present purposes to note that the cost of participating in agency proceedings is inadequate. *Hastings* holds as much. Moreover, since parties to administrative proceedings will always incur some expenses, a determination that such hardship satisfies the second prong of the ripeness test would effectively eliminate that requirement. Accordingly, I would hold that the District Court properly dismissed this case as unripe, since appellants have failed to demonstrate sufficient hardship to warrant interruption of the ongoing agency proceedings.

As the opinions in this case demonstrate, the case law in this circuit concerning exhaustion and ripeness is less than crystal clear, and reasonable minds can certainly differ as to the proper application of these doctrines to the facts of this case. In my view, however, recasting *Hastings* as an exhaustion decision simply heightens the tension between that case and *Andrade*, and makes reconciliation of the two virtually impossible except on the theory that exhaustion is a flexible concept. Without gainsaying the truth of that observation as a general matter, I believe it offers little guidance to litigants and courts as to how to resolve the next exhaustion case. I

would therefore uphold the dismissal of appellants' claims on ripeness grounds.

For many of the same reasons, I cannot subscribe to Judge Williams' view that a decision to initiate an administrative complaint is always non-final and that this court is therefore without jurisdiction to review it.[2] The Supreme Court itself has consistently emphasized, and this court has recently reaffirmed, that finality is a *flexible* and *pragmatic* concept. *See Socal*, 449 U.S. at 239, 101 S.Ct. at 493; *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. at 1515–16; *Ciba-Geigy Corp. v. Environmental Protection Agency*, 801 F.2d 430, 435 & n. 7 (D.C.Cir.1986). To hold that an agency's exercise of prosecutorial powers is non-final agency action where the exercise of such authority is consistent with the agency's decades-old practice, and where all parties agree that the agency will not and cannot renounce its authority to initiate prosecutions, strikes me as a wooden application of the finality requirement. While it is true that in *Socal* the Supreme Court held that the FTC's initiation of an administrative complaint was non-final agency action, that case did not announce the blanket rule that Judge Williams derives from it and, as suggested earlier, is distinguishable in several important respects from this suit. In *Socal*, the subjects of the complaint did not challenge the FTC's underlying authority to prosecute them, but rather the Commission's averment that it had "reason to believe" they were violating the Act. The Supreme Court noted that this averment, which is the initial step in an FTC administrative prosecution, was not a definitive statement of position but a tentative determination that could be altered in subsequent proceedings. *Socal*, 449 U.S. at 241, 101 S.Ct. at 493–94. The agency's assertion of the underlying authority to prosecute appellants here, however, is neither tentative nor, as noted above, subject to alteration or modification in any further agency proceedings. In addition, while *Socal* dismissed the litigants' claims of litiga-

---

**2.** As Judge Edwards explains in his "Postscript," that view is not the law of this circuit and I

therefore join that portion of his opinion.

757

tion expense as an insufficient showing of harm, the Court's characterization of that harm cannot be divorced from the administrative context in which the litigants' challenge arose, or from the nature of the challenge itself. The administrative scheme created by Congress clearly envisioned that litigants would, by the very act of defending themselves before the FTC, help finalize the agency's initial assessment of whether the litigants had violated the Act. To hold that this litigation expense rendered the Commission's tentative conclusion final, and therefore permitted the parties to litigate in court the very issue Congress entrusted to the agency, would obviously subvert the congressional scheme. Here, however, no amount of litigation expense or effort before the FTC could convince the agency that its prosecutorial powers are unconstitutional, nor has Congress directed persons such as appellants to litigate such constitutional issues before the agency. Viewed pragmatically then, the FTC's assertion of its prosecutorial powers must be deemed final action.

## II

The court today also declines to decide the jurisdictional question that confronted the District Court at the outset of the case—namely, whether this court's decision in *Telecommunications Research & Action Center v. Federal Communications Commission,* 750 F.2d 70 (D.C.Cir.1984) ("*TRAC*"), divests lower courts of jurisdiction to entertain constitutional challenges to an agency's underlying authority to initiate administrative proceedings. Although the District Court was obliged to resolve this jurisdictional issue before it could turn to the exhaustion and ripeness questions, Judge Edwards would vacate its discussion of *TRAC* as "unnecessary" in view of our resolution of these latter questions. Unfortunately, the nature of the *TRAC* decision is such that the jurisdictional issue will usually be moot by the time a case reaches this court,[3] yet lower courts must always wrestle with it before reaching any questions of justiciability, since courts may not decide issues over which they lack jurisdiction.

While it is suggested that *TRAC* is limited by its facts to mandamus actions seeking to compel unlawfully delayed agency action, neither the language nor rationale of the decision indicate that it is so limited,[4] and district courts have strugged to define its reach, particularly in cases involving constitutional challenges to agency action.[5] I subscribe to the view set forth by the District Court in this case, that *TRAC* is inapplicable to cases involving challenges to the constitutionality of an agency's en-

**3.** Presumably the issue would only be preserved for this court's consideration if the District Court improperly concluded that it lacked jurisdiction over an otherwise ripe challenge to ongoing agency proceedings, and exhaustion of administrative remedies was excused as unnecessary. As this case makes clear, this is a most unlikely scenario.

**4.** *TRAC* held that "where a statute commits review of agency action to the Court of Appeals, *any* suit seeking relief that *might* affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." 750 F.2d at 75 (emphasis added). In support of this rule, the court noted that it enjoyed expertise in those areas of administrative law involving agencies whose actions it normally reviewed; that exclusive review was consistent with Congress' intent to vest sole jurisdiction in the appellate courts over the "class of claims" covered by the statutory administrative review provision; and that exclusive review eliminated duplicative and potentially conflicting judicial decisions. *Id.* at 77–78.

**5.** In this case, the District Court determined that it did have jurisdiction over appellants' constitutional claims. *Ticor Title Ins. Co. v. Federal Trade Comm'n,* 625 F.Supp. 747, 749–50 (D.D.C. 1986). Another district judge in this district, however, has concluded that *TRAC* governs constitutional claims of agency bias and other due process challenges, as well as claims of unlawful agency delay. *Jamison v. Federal Trade Comm'n,* 628 F.Supp. 1548, 1551 (D.D.C.1986). And a federal district court in Massachusetts has ruled that while *TRAC* bars lower court consideration of unconstitutional bias claims, it does not divest district courts of jurisdiction to decide constitutional challenges to an agency's enabling statute. *First Commodity Corp. v. Commodity Futures Trading Comm'n,* 644 F.Supp. 597, 599–600 (D.Mass.1986). *See also Zantop Int'l Airlines v. Engen,* 601 F.Supp. 667, 669 (D.D.C.1985) ("this Court hopes that the Court of Appeals will clarify the meaning of" *TRAC*).

abling statute. Such cases present questions of constitutional law, which require no special administrative expertise to resolve, and do not fall within the "class of claims" covered by the typical statutory grant of appellate review power. *Cf. Public Utility Commissioner of Oregon v. Bonneville Power Administration,* 767 F.2d 622, 625–26 (9th Cir.1985) (statutory review provision directed that suits challenging constitutionality of the statute itself be brought in court of appeals). The *TRAC* court's concern for duplicative and potentially conflicting judicial review, while perhaps compelling in cases that implicate the merits of ongoing agency proceedings, is relatively insubstantial in a case such as this, which involves a purely legal question. Indeed, the same duplication, risk of conflict, delay, and expense are present in all cases decided in the lower courts on motions for summary judgment, yet this has not been deemed a sufficient reason to vest exclusive jurisdiction over such cases in the court of appeals. It may be, as a practical matter, that under the reasoning advanced in the three opinions today, most constitutional challenges to ongoing agency proceedings will be dismissed as premature.[6] This fact alone, however, does not relieve lower courts of their obligation to determine whether they do indeed have jurisdiction to decide any questions concerning justiciability. I would also therefore affirm the District Court's disposition of the *TRAC* issues raised by this case.

---

**6.** It is of course possible that, under the exhaustion and ripeness analyses set forth today, a subject of ongoing agency proceedings could suffer hardship greater than mere litigation expense sufficient to raise a justiciable constitutional challenge to the agency's authority to act. We cannot assume, therefore, that all challenges to ongoing proceedings are premature.